Felipe DIMAREN, a minor child by his natural mother, Maria Villanueva Diaz, and Maria Villanueva Diaz, Plaintiffs,

v.

IMMIGRATION AND NATURALIZATION SERVICE et al., Defendants.

No. 73 Civ. 1079.

United States District Court, S. D. New York.

Sept. 19, 1974.

Antonio C. Martinez, Jack Sachs, Austen G. Block, New York City, for plaintiffs.

Paul J. Curran, U. S. Atty., by Joseph P. Marro, Mary P. Mc Guire, Stanley H. Wallenstein, Sp. Asst. U. S. Attys., New York City, for defendants.

## OPINION

MOTLEY, District Judge.

The court, pursuant to its Findings of Fact and Conclusions of Law dated May 15, 1973, preliminarily enjoined defendants from denying plaintiff Diaz a stay of deportation solely on the basis of a policy directive, which became effective on May 1, 1970, until either: 1) the determination of plaintiffs' motion for a permanent injunction or 2) thirty days had elapsed after the May, 1970 policy was published in the Federal Register as a proposed rule pursuant to the Administrative Procedure Act, 5 U.S.C. § 553. The court declared that, pursuant to Fed.R.Civ.P. 65(a)(2) it would order the trial of the permanent injunction consolidated with the hearing which had already been conducted unless the parties requested an opportunity to offer additional proof or argument.

After considering the additional argument presented by the parties, the court denies plaintiffs' motion for a permanent injunction and dismisses the complaint.[1]

In its Memorandum Opinion and Order dated December 19, 1973, the court scheduled a hearing on the question of the precise meaning of the May, 1970 policy and the weight attached to that policy by the defendant district director. The policy was directed to the weight which district directors should give to the fact that a Western Hemisphere alien applicant for a stay of deportation was the parent of a child or children born in the United States during the parent's stay in considering such applications. The policy statement indicated that stays should be granted only when "compelling factors" were present.[2]

The court was of the view that if the policy statement left the district director free to consider any factors he deemed relevant in deciding whether to grant applications for stays of deportation, the policy statement might not be a rule within the meaning of 5 U.S.C. § 551(4) or might come within one of the exceptions set forth in § 553(b).

The court holds that the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, governs the Immigration and Naturalization Service's processing of applications for stays of deporta-

---

1. This court has jurisdiction of this appeal from the district director's denial of the stay of deportation. See *Cheng Fan Kwok v. I. N. S.*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Li Cheung v. Esperdy*, 377 F.2d 819 (2d Cir. 1967).

2. Memorandum to Regional Commissioner from James F. Greene, Assistant Commissioner, Operations [Immigration and Naturalization Service], "Extended Voluntary Departure for Western Hemisphere Aliens," Exh. D, attached to Defendants' Memorandum of Law in Opposition to a Permanent Injunction.

While the memorandum refers only to applications for voluntary departures, the defendant District Director has applied the memorandum to applications for stays of deportation.

This policy has apparently been modified again since Miss Diaz' application for a stay was denied. See Exh. A, attached to Plaintiffs' Memorandum of Law in Opposition to Defendants' Memorandum of Law. This subsequent modification of policy would not have any effect on the propriety of the denial of Miss Diaz' application.

tion. The A.P.A. governs all administrative proceedings except to the extent that another statute exempts the agency from coverage. 5 U.S.C. § 559. While the Supreme Court held in *Marcello v. Bonds*, 349 U.S. 302, 76 S.Ct. 757, 99 L.Ed. 1107 (1955), that the A.P.A.'s hearing requirements were superseded by § 242(b) of the Immigration Act in deportation hearings, the holding was based on a legislative history which made it clear that Congress intended not to make the hearing provisions of the A.P.A. directly applicable to hearings on deportability. The strongest indication of Congress' intention was the Immigration Act's " . . . detailed coverage of the same subject matter dealt with in the hearing provisions of the [A.P.A.] . . . ." 349 U.S. at 307, 308, 75 S.Ct. at 761.

■ The Immigration Act, however, does not provide hearing on rule-making procedures in connection with applications for stays of deportation and nothing in the legislative history suggests Congress intended to exempt such proceedings from the A.P.A.'s coverage.

■ The court, nevertheless, concludes, after examining the May, 1970 policy statement, that, while the policy announced is a "rule" within the meaning of 5 U.S.C. § 551(4),[3] it is exempted from the rule-making requirements of § 553 since it was an interpretive rule or general statement of policy. 5 U.S.C. § 553(b)(A).

3. 5 U.S.C. § 551(4) provides in pertinent part:
  " '[R]ule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . . ."

4. *See* Findings of Fact and Conclusions of Law, May 15, 1973, 9.

5. Indeed, it appears that defendant district director has treated the memorandum as if it had binding effect.

6. 8 C.F.R. § 243.4, which governs applications for stays of deportation, provides in pertinent part:

■ The rule-making provisions of the A.P.A. should be generously construed.[4] However, only rules that have a "substantial impact on those regulated," that is, ordinarily, rules that change " . . . existing rights and obligations," are subject to the rule-making requirements of § 553. *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478, 482 (2d Cir. 1972).

The May, 1970 policy statement had no binding effect upon the district directors. The memorandum states that " . . . all districts are *requested* to review their local policies concerning cases of nonimmigrant aliens who have children born in the United States." (Emphasis added.) According to the memorandum, " . . . this instruction [is not] intended to restrict the district director's discretion to take action which would prevent separation of families or grant extensions of departure time in individual hardship cases." The district director is requested to " . . . review . . . [his] policies accordingly."

■ It seems clear that the district director was left free to attach whatever weight he deemed appropriate to the new policy. While it might be anticipated that such a memorandum would have considerable impact on the policies of the district director,[5] the court cannot conclude that the memorandum altered the existing right of plaintiff Diaz to have her application granted in the *discretion* of the district director.[6]

"Any request by an alien under a final administrative order of deportation for a stay of deportation . . . shall be filed on Form I-246 with the district director having jurisdiction over the place where the alien is at the time of filing. The district director, in his discretion, may grant a stay of deportation for such time and under such conditions as he may deem appropriate. Written notice of the disposition of the alien's request shall be served upon him, but neither the making of the request nor the failure to receive notice of the decision thereon shall relieve or excuse the alien from presenting himself for deportation at the time and place designated for his deportation."

The next question is whether the district director's denial of plaintiff Diaz' application was improper because he considered himself bound by a policy statement which was not intended to have binding effect on the district directors.

The denial of a stay of deportation can be set aside by a reviewing court only if the district director has abused his discretion, that is, if his decision was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group . . . ." *Li Cheung v. Esperdy,* 377 F.2d 819, 820 (2d Cir. 1967); *see also Wong Wing Hang v. I. N.S.,* 360 F.2d 715, 719 (2d Cir. 1966).

Of course, the district director is required by 8 C.F.R. § 243.4 to exercise his discretion. An argument might be made that defendant district director, by considering himself bound by the policy described in the 1970 memorandum, improperly failed to exercise his discretion. However, the exercise of discretion involves the consideration of competing policies and the assignment to those policies of whatever weight the district director deems them to merit.

Nor have plaintiffs shown that the policy set forth in the memorandum was irrational. In setting aside the apparent previous policy of routinely granting stays to parents of citizen children pending the determination of the parents' applications for permanent visas,[7] the district director could have reasonably concluded that ". . . aliens from the Western Hemisphere [were] obtaining entry into this country, ostensibly as temporary visitors, but thereafter remaining illegally and avoiding apprehension as long as possible in the hope of having a child born on American soil. Once the child was born, the alien parent became exempt from the labor certification contained in Section 212(a)(14) of the Immigration and Nationality Act . . . and would apply for immigrant visas and expect to be allowed to remain in this country until the counsul was ready to issue the visa." (Defs' Memorandum of Law in Opposition to a Permanent Injunction, pp. 8–9). It could be rationally concluded that not all aliens from the Western Hemisphere who had citizen children were deserving of stays, that many had taken advantage of the previous, more liberal policy of routinely granting stays to parents of citizen children and that, therefore, an applicant should be required to show more than parentage of a citizen child and some economic hardship.

Moreover, a stricter policy was justified by the fact that the waiting time for consideration of visa applications had increased. (See Exh. E, p. 2, attached to Defendants' Memorandum of Law in Opposition to a Permanent Injunction.)

Plaintiff Diaz has, therefore, failed to show that the district director's decision was made ". . . without a rational explanation, inexplicably departed from established policies,[8] or rested on an impermissible basis . . . ." *Li Cheung, supra,* 377 F.2d at 820.

The court has raised on its own motion the question whether stay of deportation proceedings are governed by the procedural requirements of 5 U.S.C. §§ 554, 556 and 557 and, in particular,

7. Findings of Fact and Conclusions of Law, p. 6.

8. It appears that the policy was to grant stays in cases of *severe* economic hardship. (See Exh. D, attached to Defendants' Memorandum of Law in Opposition to a Permanent Injunction). However, there has been no showing that Miss Diaz presented evidence of the kind of severe economic hardship or other "compelling" factors on which the district director had granted stays in other cases. If such a showing had been made, the district director's decision might have been subject to attack as inexplicably departing from established policies.

whether the district director's decision denying Miss Diaz' application complied with § 557 which requires that decisions include "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record . . . ."[9]

However, §§ 554, 556 and 557 apply only in cases of adjudication ". . . required by statute to be determined on the record after opportunity for an agency hearing . . . ," with certain exceptions not relevant here. 5 U.S.C. § 554(a).

■ There is no such statutory right in cases of applications for stays of deportation. Indeed, there is no statutory provision for stays. Title 8 C.F.R. § 243.4 authorizing the district director to grant stays of deportation was promulgated by the Attorney General pursuant to 8 U.S.C. § 1103 (1958) which charges the Attorney General with administration and enforcement of the Immigration Act. *See* 36 Fed.Reg. 318 (Jan. 9, 1971) ; 26 Fed. Reg. 12113 (Dec. 19, 1961).[10]

Nor is there any general provision in the Immigration and Nationality Act providing for hearings in such proceedings. Title 8 U.S.C. § 1252 describes the procedural rights incident to proceedings to determine deportability. Title 8 U.S.C. § 1254, which has "long been subjected to various administrative hearing and appeal procedures, " *Wong Wing Hang v. I.N.S.*, 360 F.2d 715, 718 (2d Cir. 1966), governs applications for suspensions, rather than stays, of deportation.

■ Therefore, the court concludes that 5 U.S.C. § 557 is inapplicable.

No claim has been made by plaintiff that Due Process requires in this instance a written statement of the reasons for the denial of a stay. In any event, the district director has explained the reasons for the denial, i.e. failure to show compelling humanitiarian circumstances. See, e. g., Affidavit of Joseph P. Marro in Opposition to a Motion for a Preliminary Injunction.

■ Finally the court rejects plaintiffs' claim that deportation of Miss Diaz would effectively result in the deportation of her citizen children from the United States in violation of the Constitution. Entry into this country by aliens has always been a matter of Congressional discretion and Congress did not give minor children who were ". . . born here due to . . . [their] parents' decision to reside in this country . . . the ability to confer immigration benefits on . . . [their] parents." *Perdido v. I.N.S.*, 420 F.2d 1179, 1181 (5th Cir. 1969). *See also Faustino v. I.N.S.*, 302 F.Supp. 212, 214 (S.D.N.Y.1969), aff'd 432 F.2d 429 (2d Cir. 1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971).

The court can find no authority for ordering that defendants provide plaintiff Felipe Dimaren with the necessities of life during such time as he is absent from the United States.

The preliminary injunction is vacated. Plaintiffs' motion for a permanent injunction is denied and the complaint is dismissed.

---

9. The decision denying plaintiff Diaz' application did not state any reasons for the denial. (Exh. C, attached to Defendants' Memorandum of Law in Opposition to a Permanent Injunction).

10. While the regulations, 26 Fed.Reg. 12113 stated that §§ 243.1 to 243.7 should be interpreted in accordance with 8 U.S.C. §§ 1252, 1253, it is unlikely that it was intended that the hearing requirements of § 1252 would govern stays of deportation.