MATTER OF BANARIA

In Deportation Proceedings

A–21425016

A–19320146

A–21425017

*Decided by Board December 6, 1977*

Board of Immigration Appeals dismissed appeal for lack of jurisdiction to extend voluntary departure time in deportation case where the Service had, without formal notice, rescinded an operations instruction which previously granted extended voluntary departure to an alien with an approved third-preference visa petition; Board, however, noted a recent change of Immigration and Naturalization Service policy (42 Fed. Reg. 49459–49461) whereby such aliens will receive extended voluntary departure from the District Director if their visa priority dates precede the date the rescission of the instruction becomes effective by publication in the form of a new regulation, 8 C.F.R. 242.5(a)(2).

CHARGE:

Order: Act of 1952—Section 241(a)(2), I. & N. Act [8 U.S.C. 1251(a)(2)]—Temporary nonimmigrants—remained longer than permitted

ON BEHALF OF RESPONDENTS:
Edward L. Dubroff, Esquire
Barst & Mukamal
127 John Street
New York, New York 10038

ON BEHALF OF SERVICE:
Mary Jo Grotenrath
Appellate Trial Attorney

BY: Milhollan, Chairman; Wilson, Maniatis, Appleman, and Maguire, Board Members

The respondents have appealed from an immigration judge's order of March 21, 1977, denying a motion to reopen their deportation proceeding. The appeal will be dismissed.

The respondents are a family from the Philippines who were admitted to the United States on May 29, 1972, as temporary nonimmigrants pursuant to section 101(a)(15)(H) of the Immigration and Nationality Act. The "H" status of Francisco Banaria and Riel Banaria was dependent upon the "H" status of Luzviminda Banaria, a registered nurse. See 8 C.F.R. 214.2(h)(1). Her original employer and sponsor was Saratoga Hospital in Saratoga, New York.

On August 2, 1972, Mrs. Banaria filed a third-preference visa petition

421

with the Immigration and Naturalization Service, pursuant to section 203(a)(3) of the Act. The petition was approved by the Service on July 16, 1973.

On March 21, 1975, Mrs. Banaria gave birth to a child who is a United States citizen.

The respondents neglected to seek an extension of their "H" nonimmigrant status after April 30, 1975. Mrs. Banaria has urged that alleged complications surrounding the birth of her second child should excuse her neglect to seek a further extension of the family's nonimmigrant status at the proper time.

After several months during which she stayed home and cared for her baby, Mrs. Banaria went back to work as a nurse. On March 4, 1976, her present employer, St. Clare's Hospital in Schenectady, New York, submitted a new "H" visa petition in her behalf to the Immigration Service.[1] The hospital's petition was approved by the District Director on April 29, 1976, with the express condition that Mrs. Banaria was scheduled for a deportation hearing on May 5, 1976, because of her lapsed nonimmigrant status.

On March 30, 1976, the Acting Officer in Charge of the Immigration and Naturalization Service Office in Albany, New York, had issued Orders to Show Cause alleging that the Banarias should be deported pursuant to section 241(a)(2) of the Act for remaining in the United States beyond April 30, 1975, without the authority of the Service.

On April 6, 1976, the respondents asked the Service to place them back into their lapsed nonimmigrant "H" visa status. Alternatively, they requested a grant of indefinite (extended) voluntary departure because of Mrs. Banaria's approved third-preference visa petition.

On May 4, 1976, the Acting Officer in Charge denied the respondents' request to reinstate their "H" status since Mrs. Banaria did "not appear to be a bona fide nonimmigrant, in that it has not been established that she intends to depart from the United States within a definite time and that she has a residence abroad to which she intends to return." See section 101(a)(15)(H) of the Act. This decision of May 4 appears to contradict the District Director's approval of a new "H" visa petition for the Banarias five days before.

On June 1, 1976, the District Director denied the respondents' alternative request for indefinite voluntary departure pending availability of a third-preference immigrant visa within the oversubscribed Philippine quota.[2] The District Director's denial was apparently based squarely on

---

[1] Mrs. Banaria had begun working at St. Clare's in August, 1973, without prior authorization from the Immigration and Naturalization Service. See 8 C.F.R. 214.2(h)(11).

[2] The Visa Office in the Department of State, which maintains records and publishes a bulletin on a visa availability, shows approximately a six-year waiting period before a visa can be issued to a Filipino who files a third-preference immigrant visa petition.

the fact that section 242.10(a)(6) of the Service's Operations and Instructions Manual had been rescinded on July 31, 1972, that is, just two days before Mrs. Banaria filed her third-preference visa petition.

Under an Immigration and Naturalization Service policy in effect at least from August 1956, until July 31, 1972, a nonimmigrant, physically present in the United States, who was subject to deportation but who filed a satisfactory third-preference visa petition, was eligible for "extended (indefinite) voluntary departure." See former Operations Instruction 242.10(a)(6)(i).[3]

The respondents did not depart by September 7, 1976, and a Warrant respondents challenged the Service's refusal to reinstate their "H" status. The immigration judge properly held that he had no jurisdiction to review that Service determination, and therefore found the respondents deportable as overstays. The respondents applied for relief under section 243(h) of the Act, claiming they would be persecuted if they returned to the Philippines. The immigration judge denied that relief as there was clearly no substance to the claim. The respondents were granted the privilege of departing voluntarily on or before September 7, 1976. No appeal was taken from the immigration judge's decision.

The respondents did not depart by September 7, 1976 and a Warrant of Deportation was issued pursuant to 8 C.F.R. 243.2. At this point, the respondents entered United States District Court in the Northern District of New York and requested a preliminary injunction and a declaratory judgment against the Immigration and Naturalization Ser-

---

One purpose of the Immigration and Nationality Amendment Act of October 20, 1976, Public Law 94–571, 90 Stat. 2703, is to shorten this wait for a preference immigrant visa for oversubscribed countries. See section 3(3) of Public Law 94–571. As a result of the amendment to 8 U.S.C. section 1152(e), Filipino petitioners with lower preferences should now move up the waiting lists more quickly.

[3] In pertinent part, the Operations Instructions read:

242.10 *Voluntary departure prior to commencement of hearing.* (a) *Authorization.* Voluntary departure may be granted. . . .

2. A "PSA" [professional, scientist, or artist] alien in the United States on July 31, 1972, for whom an approved third or sixth preference petition was filed on or before that date.

. . . .

. . . Nothing in this memorandum is intended to affect the grant of voluntary departure to any alien eligible for that privilege on other grounds . . . .

. . . [U]nder OI 242.10(a)(8) . . . [a] careful review is to be made of each case presented to determine whether or not compelling factors are present.

* * *

The aspects of the memorandum omitted in the preceding excerpt refer to Operations Instruction 242.10(a)(6)(ii), also rescinded effective July 31, 1972, which announced a similar policy of extended voluntary departure, but with respect to certain Western Hemisphere aliens, a provision not involved in this case. See *Noel* v. *Chapman,* 508 F.2d 1023 (2 Cir.), *cert. denied* 423 U.S. 824 (1975), discussed *infra.*

vice. The Government agreed to defer further action on the deportation warrant until the motion for the preliminary injunction could be heard and a decision rendered.

The respondents based their motion on essentially two grounds. They argued that the Service's refusal to reinstate their "H" status was arbitrary and capricious. The court had no trouble disposing of this argument, both on procedural grounds and on the merits.

The second issue raised by the respondents was a difficult one. They argued that the District Director's denial of their request for indefinite voluntary departure was invalid because the Service had revoked Operations Instruction 242.10(a)(6)(i) without complying with the requirements of the Administrative Procedure Act.

Neither Operations Instruction 242.10(a)(6)(i) nor the 1972 memorandum rescinding it was published in the Federal Register.

The court found that there was little likelihood that the respondents would succeed in their APA claim. It relied on *Noel v. Chapman, supra; Dimaren v. INS,* 398 F. Supp. 556, 559 (S.D.N.Y. 1974); and *Yan Wo Cheng v. Rinaldi,* 389 F. Supp. 583, 588-589 (D. N.J. 1975).

Since the court found that the respondents were not likely to obtain ultimate relief, it denied their request for a preliminary injunction on October 21, 1976, but stayed its order until October 28, 1976, to allow the respondents time to appeal to the United States Court of Appeals and to apply for a further stay of deportation.

The United States Court of Appeals for the Second Circuit did grant a further stay of deportation so that it could hear the respondents' appeal. On January 13, 1977, it affirmed the decision of the District Court denying the respondents' request for a preliminary injunction, and vacated the stay of deportation.

After failing to obtain a preliminary injunction, the respondents asked the District Director for a new grant of voluntary departure for the purpose of selling their home, an automobile, and their personal belongings. The District Director agreed to allow them to depart voluntarily within 45 days of the decision of the United States Court of Appeals. They did not depart within that period.

On February 24, 1977, the respondents filed a motion to reopen their deportation proceedings. They essentially sought to relitigate the two issues which they had raised in the Federal District Court and the Court of Appeals. On the APA issue, they relied on a case recently decided by Judge Becker in the Federal District Court for the Eastern District of Pennsylvania, *U.S. ex rel. Parco v. Morris,* Civ. No. 73-2496 (January 28, 1977).

In a decision dated March 21, 1977, the immigration judge denied the motion to reopen on the ground that this case arises in the Second Circuit, and that therefore *Noel v. Chapman, supra,* is controlling. The

immigration judge also relied upon the facts that the law of the case had been tentatively determined by the Second Circuit's affirmance of *Banaria* v. *INS*, Civ. No. 76–CU–352 (N.D.N.Y. October 21, 1976).

The immigration judge did not deal with the question of whether he had jurisdiction to review the Service decisions denying the respondents' requests for reinstatement of their "H" status and for extended voluntary departure.

After hearing oral argument in this case, we granted the respondents a stay of deportation on June 14, 1977, pending our decision of their appeal from the immigration judge's order.

We find that we do not have jurisdiction to decide either of the issues presented. *Matter of Teberen,* Interim Decision 2498 (BIA 1976); *Matter of Hosseinpour,* Interim Decision 2349 (BIA 1975), aff'd, 520 F.2d 941 (5 Cir. 1975) (table); *Matter of Halabi,* Interim Decision 2322 (BIA 1974); *Matter of Sourbis,* 11 I. & N. Dec. 335 (BIA 1965).

Although we must dismiss the appeal for lack of jurisdiction, we note that the Federal Register of September 27, 1977, contains a statement of Immigration and Naturalization Service policy which is crucial to the resolution of this case. See 42 Fed. Reg. 49459–49461. The essential part of the Immigration and Naturalization Service announcement states:

> On January 28, 1977, in *U.S. ex rel. Parco* v. *Morris,* Civil Action No. 73–2496 (U.S.D.C.E.D. Pa.) it was held that failure of the Service to publish its change of policy respecting the grant of extended voluntary departure to third-preference aliens pending availability of a visa number in the FEDERAL REGISTER, was a violation of the Administrative Procedure Act and that this change in policy could not be applied against the relators to compel their departure from the United States. Although the Service might have chosen to appeal, this decision came at a time when the Service was embracing a policy of greater openness, characterized by publishing more operations instructions in the FEDERAL REGISTER as rules, and this operations instruction was deemed to be one which ought to be so published, whether or not required by law. For this reason the Service is publishing this notice of proposed rule making to place the public and interested parties on notice that it remains the policy of the Service that extended voluntary departure pending availability of a visa number is not to be routinely granted third-preference aliens or the others in classes specified in the above quoted operations instruction which was rescinded effective July 31, 1972. Third-preference aliens with a priority date earlier than the effective date of this regulation [i.e., the new 8 C.F.R. 242.5(a)(2)] . . . will continue to receive extended voluntary departure until visa numbers become available. Third-preference aliens with priority dates later than the effective date of this regulation will not receive extended voluntary departure unless they are accorded it under some other policy expressed in the new version of 8 C.F.R. 242.5(a)(2). *Id.* at 49460.

Thus, because of the new Immigration and Naturalization Service policy, it appears that the respondents will be granted relief. They must, however, apply to the District Director for that relief, not to this Board.

**ORDER:** The appeal is dismissed.