Hossein A. SALEHI, Petitioner-Plaintiff,

v.

DISTRICT DIRECTOR, IMMIGRATION & NATURALIZATION SERVICE, Respondent-Defendant,

and

The Attorney General of the United States, Defendant.

Jean LAHIGANI, Plaintiff,

v.

DISTRICT DIRECTOR, IMMIGRATION & NATURALIZATION SERVICE and The Attorney General of the United States, Defendants.

Bijan HAKIMZADEH, Petitioner,

v.

DISTRICT DIRECTOR, IMMIGRATION & NATURALIZATION SERVICE, et al., Respondents.

Civ. A. Nos. 82–JM–1800, 82–JM–1970 and 83–JM–566.

United States District Court, D. Colorado.

Dec. 28, 1983.

David Doering, Denver, Colo., for plaintiff.

Steven Klein, Asst. U.S. Atty., Denver, Colo., for defendants.

## ORDER

JOHN P. MOORE, District Judge.

The petitioners in these consolidated cases are Iranian natives. They have been residing in the United States illegally since conditional orders of deportation were entered against them in March 1980. At that time, none completed formal objections to these orders. In each of these cases, the deportation orders became final when the petitioners failed to voluntarily depart from this country. Approximately two and one-half years after the deportation orders became final, the plaintiffs were arrested, and the Immigration and Naturalization Service ("INS") made arrangements for their immediate deportation to Iran. Plaintiffs Dolbrow and Hakimzadeh filed motions to reopen their deportation proceedings immediately following their arrests. Plaintiff Lahigani filed a petition to reopen several months after a final order of deportation was entered against him, but the motion was subsequently withdrawn, and no new motion to reopen has been filed by him.

Subsequently, in each of these cases, habeas corpus petitions were filed, and relief was granted insofar as effectuating petitioners' immediate release from custody. In 82–JM–1800 and 82–JM–1780, relief was granted in the form of a preliminary injunction to preserve the status quo and to restrain the defendant INS from detaining plaintiffs until a decision had been reached on the merits of their constitutional claims. Relief was granted in 83–JM–566 in the form of an order releasing Hakimzadeh from the Denver County Jail. The plaintiffs presently remain in the United States under supervision of the defendants pending resolution of the constitutional issues raised in their complaints.

The parties have filed cross motions for summary judgment in these consolidated cases on the merits of the constitutional claims of the petitioners. The defendants assert that this court lacks jurisdiction to consider the issues presented by the petitioners' complaints. The petitioners contend that there is subject matter jurisdiction to consider the claims advanced. They argue that they have the right to apply for asylum as well as the affirmative right not to be deported where the criteria of § 243(h) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1253(h),[1] or article 33 of the Protocol Relating to the Status of Refugees have been met.[2] They

---

1. "The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion or political opinion and for such period of time as he deems to be necessary for such reason." 8 U.S.C. § 1253(h).

2. In 1968 the United States acceded to the United Nations Protocol Relating to the Status of Refugees, entered into force with respect to the United States November 1, 1968, 19 U.S.T. 6223, T.I.A.S. No. 6577. The protocol defines a refugee as one having a "well-founded fear of being persecuted for reasons of race, religion, nationality, membership of a particular social group or political opinion." Article 33 sets out the obligations of the United States toward aliens falling within this definition. It prohibits deportation of a refugee "to the frontiers or territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social

also contend that they have been denied due process of law by the failure of INS regulations to provide for a stay of deportation pending decision on the above claims and an automatic hearing when these claims are raised. Mr. Salehi additionally asserts that the denial of his application for a stay pending exhaustion of administrative remedies was arbitrary, capricious, and an abuse of discretion.

■ The threshold question in this matter is whether this court has jurisdiction to hear petitioners' due process claims. As a general principle, the power exercised over aliens is of a political character and is thus subject only to narrow judicial review. *Hampton v. Mau Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976). Section 279 of the Act, 8 U.S.C. § 1329, confers jurisdiction upon United States district courts over all claims arising under title 8. District court jurisdiction is limited, however, by the operation of § 106(a) of the Act [8 U.S.C. § 1105a(a)], which confers exclusive jurisdiction upon the courts of appeal to review final orders of deportation made against aliens pursuant to § 242(b) of the Act, 8 U.S.C. § 1252(b). *See Reyes v. I.N.S.*, 571 F.2d 505 (9th Cir.1978); *Acosta v. Gaffney*, 558 F.2d 1153 (3rd Cir.1977).

■ The controlling intention of Congress in enacting § 106(a) was to have one "single, separate statutory form of judicial review." H.R.Rep. No. 1086, 87th Cong. 1st Sess. 22–23 (1961), U.S.Code Cong. & Admin.News 1961, pp. 2950, 2966. The vesting of exclusive jurisdiction in the circuit courts was designed to prevent successive dilatory appeals to various federal courts, *Foti v. I.N.S.*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), as well as to further the goal of preserving judicial resources. The Supreme Court decisions interpreting the phrase "final order of deportation" define the scope of the exclusive jurisdiction established by § 106(a) to include orders arising from the proceedings for deportation conducted pursuant to § 242(b), including denials of motions to reopen and claims for asylum.[3] In its most recent interpretation of the scope of § 106(a), the Court ruled that it "includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing." *I.N.S. v. Chadha*, —— U.S. ——, ——, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983), *citing Chadka v. I.N.S.*, 634 F.2d 408, 412 (9th Cir.1980).

■ In so ruling, the Court held that circuit courts have original jurisdiction over constitutional claims made in connection with claims under § 106(a). This result is consistent with the rationale for vesting exclusive jurisdiction in the circuit courts. If the courts of appeal do not have jurisdiction to hear constitutional claims asserted in connection with the § 106(a) review, then cases like the instant ones, where both a finding of deportability and the procedures utilized to reach such a conclusion are challenged, will require one hearing in the court of appeals on deportability and conceivably three other hearings in the federal court system on the constitutional challenge. This scenario flatly contradicts express congressional intent that the issue of

group or political opinion." Article 3 requires the United States to apply the provisions of the protocol "without discrimination as to race, religion or country of origin."

3. In *Foti v. I.N.S.*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), the Court held that the phrase "final orders of deportation" included "all determinations made during and incident to the administrative proceeding" conducted by an immigration judge and reviewable by the Board of Immigration Appeals. *Id.* at 229, 84 S.Ct. at 313. The Court included in such exclusive jurisdictions claims for the withholding of deportation under § 243(h). In *Giova v. Rosenburg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), the Court indicated that the exclusive jurisdiction of the courts of appeal also encompassed all denials of motions to reopen deportation proceedings. Jurisdiction was further defined by the decision in *Cheng Fan Kwok v. I.N.S.*, 392 U.S. 206, 208, 88 S.Ct. 1970, 1972, 20 L.Ed.2d 1037 (1968), which held that the exclusive jurisdiction is limited to orders arising from the proceedings for deportation provided in § 242(b) and is inapplicable to orders denying ancillary relief unless the orders are entered in the course of a proceeding or are denials of motions to reopen such proceedings.

deportability be determined expeditiously. The *Chadka* reading also produces a result that avoids a practical concern; namely, whether a district court can fairly resolve procedural due process claims raised in connection with a final order of deportation without transgressing into the reserved and exclusive jurisdiction of the circuit courts to hear the substantive claims to which the procedures have been applied. In sum, the authority of courts of appeal to hear constitutional challenges to determinations on which final orders of deportation are contingent is concomitant to their exclusive jurisdiction over claims under § 242(b) seeking review of final orders of deportation.

■ This jurisdictional scheme is complicated, however, by the existence of § 106(a)(9) of the Act, 8 U.S.C. § 1105a(a)(9). That section provides that an alien held in custody pursuant to an order of deportation may obtain judicial review thereof by a habeas corpus proceeding. The issue is whether, by including this provision in the Act, Congress intended to create an exception to its mandate of exclusive review where the allegations in a habeas petition seek review of a final order of deportation. Given that the circuit courts have authority to address constitutional challenges to determinations which go to final orders of deportation, the conclusion that § 106(a)(9) is an exception to the general jurisdictional scheme above is not compelled. To honor the policies promoted by exclusive jurisdiction, the preferable course is to read § 106(a)(9) consistently with the mandate for exclusive jurisdiction established by Congress. This can be accomplished by interpreting § 106(a)(9) to provide habeas corpus relief at the district court level only to discretionary decisions not made in connection with a deportation proceeding or to collateral attacks on the proceedings.

■ Applying the above principles to the case at bar, I note first that insofar as the habeas petitions before me raise due process issues in connection with the substance or procedure by which the INS obtained custody of petitioners or other collateral matters, petitioners have already been granted the relief sought. The remaining claims, however, attack the constitutionality of regulations that establish the procedures for the evaluation of asylum claims upon the filing of a motion to reopen. Thus, it is clear that the petitioners' constitutional claims are aimed directly at the propriety of the INS' determination as to their deportability conducted pursuant to § 242(b). Their attack on these procedures, if successful, would overturn the deportation order just as if the order's validity had been directly impugned. Accordingly, it appears that the petitions before me are no more than requests, on constitutional grounds, for review of final deportation orders. Under the express terms of § 106(a), I am without jurisdiction to hear such claims.

On the basis of the foregoing, it is

ORDERED that the motion of plaintiff Hakimzadeh to consolidate action No. 83–JM–566 with the consolidated case of *Salehi, et al. v. District Director, et al.*, civil action Nos. 82–JM–1800 and 82–JM–1970, is granted.

FURTHER ORDERED that these consolidated cases are dismissed for lack of subject matter jurisdiction.

FURTHER ORDERED that the preliminary injunctions entered in cases 82–JM–1800 and 82–JM–1970 are vacated.