796 F.2d 1286
 Hossein A. SALEHI, Jean Lahigani and Bijan Hakimzadeh,
Petitioners-Appellants,
v.
DISTRICT DIRECTOR, IMMIGRATION & NATURALIZATION SERVICE,
Immigration & Naturalization Service, and the
Attorney General of the United States,
Respondents-Appellees.
 Nos. 84-1006, 84-1007 and 84-1008.
 United States Court of Appeals,
Tenth Circuit.
 July 16, 1986.
 
 David M. Doering, Denver, Colo., for petitioners-appellants.
 James W. Winchester, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with him on brief), Denver, Colo., for respondents-appellees.
 Before McKAY, BREITENSTEIN,* and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Hossein A. Salehi, Jean Lahigani, and Bijan Hakimzadeh (petitioners) are aliens subject to final orders of deportation. They brought suit challenging various administrative actions, regulations, and decisions, invoking jurisdiction pursuant to, inter alia, Secs. 106(a) & 279 of the Immigration and Nationality Act (the Act), 8 U.S.C. Secs. 1105a(a), 1329 (1982), as well as 28 U.S.C. Secs. 1331 & 2255 (1982). The district court dismissed their claims for lack of subject matter jurisdiction under section 106(a) of the Act, 8 U.S.C. Sec. 1105a(a), which confers exclusive jurisdiction upon the courts of appeals to review all final orders of deportation. See Salehi v. District Director, 575 F.Supp. 1237 (D.Colo.1983). Petitioners appeal, and we reverse.
 
 I.
 BACKGROUND
 
 2
 Petitioners are Iranian natives and citizens. They have been living illegally in the United States since 1980, when deportation orders against them were entered and they failed to depart. Salehi and Lahigani were found deportable for overstaying the terms of their visas. Lahigani was also found deportable for transferring between schools without permission from the Immigration and Naturalization Service (INS). Hakimzadeh failed to comply with the conditions of his status by working without INS permission.
 
 
 3
 About two and a half years after the orders became final, each petitioner was arrested by INS agents and detained until he could be put on a flight to Tehran. Salehi's subsequent motion to reopen his deportation proceedings was denied by the immigration judge, and Salehi appealed to the Board of Immigration Appeals (BIA). He also applied to the INS district director for a stay of deportation pursuant to 8 C.F.R. Sec. 243.4 (1985), which the district director denied. Before his arrest, Lahigani had filed a motion to reopen the deportation proceedings and had withdrawn that motion. He has not renewed the motion. After his arrest, Hakimzadeh filed an application for a stay of deportation with the INS district director as well as a motion to reopen with the immigration judge and an accompanying request for a stay pending the motion to reopen. The immigration judge denied Hakimzadeh's motion to reopen and request for a stay, and Hakimzadeh appealed to the BIA.
 
 
 4
 After his arrest and while he was in INS custody, each petitioner filed suit in the Colorado district court seeking a writ of habeas corpus and claiming status as a refugee. Salehi and Lahigani also requested a declaratory order. Salehi asserts that he would be persecuted if forced to return to Iran because he has embraced the Roman Catholic faith while living in the United States, and because he and members of his family supported the deposed Shah and worked for Savak, the Shah's police force. Lahigani's fear of returning to Iran is based on his Jewish ethnic and religious background. Hakimzadeh anticipates persecution on political and religious grounds. Although he was raised as a Moslem, he is now an atheist. His political activities while living in the United States include ties to the Iranian Student Association, a group opposed to the Khomeni government; involvement with the Fadai organization, a leftist group opposed to the Khomeni government; and subscription to the Persian language newspaper KAR, published by supporters of the Mujahdeen. Hakimzadeh has spoken out against Khomeni and believes that pro-Khomeni Iranians in Denver may have reported him to unnamed sources in Iran. All three petitioners allege that the length of time they have spent in the United States would make them inherently suspect by the fundamentalist Moslems who control Iran.
 
 
 5
 Petitioners argue that they have the right to apply for asylum and the affirmative right not to be deported where the criteria of either section 243(h) of the Act, 8 U.S.C. Sec. 1253(h),[1] or the Protocol Relating to the Status of Refugees (the Protocol)[2] have been met. They also contend that they were denied due process because the INS regulations do not provide for an automatic hearing and stay of deportation upon the filing of a motion to reopen deportation proceedings based on a claim of refugee status.[3] Salehi further asserts that the INS district director's denial of his application for an administrative stay of deportation pursuant to 8 C.F.R. Sec. 243.4 was arbitrary, capricious, and an abuse of discretion. Hakimzadeh alleges that the district director's failure to rule on his application for a stay under 8 C.F.R. Sec. 243.4 was an abuse of discretion.
 
 
 6
 The district court initially ordered all three petitioners released from custody and enjoined the INS from further detaining Salehi or Lahigani pending resolution of their claims. All three remained in the United States under INS supervision, and Lahigani and Hakimzadeh were required to post bond. Subsequently, on cross motions for summary judgment, the court ordered the three cases consolidated and dismissed them for lack of subject matter jurisdiction. It also dissolved the preliminary injunctions entered on behalf of Salehi and Lahigani.
 
 
 7
 Pending appeal, we ordered restoration of the injunctions terminated by the district court and granted Hakimzadeh's motion for an injunction. We also consolidated the three cases.
 
 II.
 
 8
 JURISDICTION OF CLAIMS BASED ON THE ACT, THE PROTOCOL, AND
 
 THE CONSTITUTION
 
 9
 The district courts have jurisdiction generally of all civil and criminal causes arising under the immigration statutes. See 8 U.S.C. Sec. 1329.[4] This grant of jurisdiction is limited, however, by section 106(a) of the Act, which provides that jurisdiction is exclusively in the courts of appeals over petitions for judicial review of final orders of deportation entered against aliens in the United States pursuant to administrative proceedings under section 242(b) of the Act, 8 U.S.C. Sec. 1252(b). Section 242(b) proceedings are conducted by an immigration judge to determine whether an alien may be deported, and the immigration judge's decision is reviewable by the BIA. An exception to the exclusive court of appeals jurisdiction is provided in section 106(a)(9) which states that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. Sec. 1105a(a)(9).
 
 
 10
 Petitioners, who were under arrest, invoked both habeas corpus jurisdiction and the general jurisdiction of the court. The district court construed section 106(a)(9) to provide habeas jurisdiction in district court only over actions not challenging the deportation order itself, i.e., those actions not exclusively in the court of appeals under section 106(a). The court then concluded that petitioners were in essence seeking direct review of their deportation orders, which, under its construction of section 106(a)(9), is available only in the appellate courts. Because we hold that petitioners are not contesting the validity of their deportation orders, and because they are in custody,[5] we conclude that the district court has jurisdiction under both the general jurisdictional grants and the habeas provisions. We thus need not determine whether the court was correct in construing section 106(a)(9) to provide habeas jurisdiction only over those claims not attacking the validity of the deportation order. Compare United States ex rel. Marcello v. District Director, 634 F.2d 964 (5th Cir.) (alien in custody may directly challenge deportation order in district court under section 106(a)(9)), cert. denied, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981), and Pilapil v. INS, 424 F.2d 6, 8-9 (10th Cir.) (same in dicta), cert. denied, 400 U.S. 908, 91 S.Ct. 152, 27 L.Ed.2d 147 (1970), with Daneshvar v. Chauvin, 644 F.2d 1248 (8th Cir. 1981) (review in district court under section 106(a)(9) available only when deportability itself not an issue).
 
 
 11
 The Supreme Court has held that the phrase "final orders of deportation" in section 106(a) embraces "all determinations made during and incident to the administrative proceeding" conducted by the immigration judge and reviewable by the BIA. Foti v. INS, 375 U.S. 217, 229, 84 S.Ct. 306, 314, 11 L.Ed.2d 281 (1963). Final orders of deportation thus include discretionary determinations made by the Attorney General relating, for example, to the suspension or withholding of deportation, if such determinations are made in the course of a deportation proceeding. Id.; see also Cheng Fan Kwok v. INS, 392 U.S. 206, 211-13, 88 S.Ct. 1970, 1973-74, 20 L.Ed.2d 1037 (1968). The reach of section 106(a) extends to denials of motions to reopen deportation proceedings before the BIA and to determinations made incident to a motion to reopen. See Cheng Fan Kwok, 392 U.S. at 216, 88 S.Ct. at 1976; Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam); Motamedi v. INS, 713 F.2d 575, 575-76 (10th Cir.1983). The Court has reasoned that
 
 
 12
 "[t]he denial of an application to reopen a deportation proceeding is readily distinguishable from a denial of a stay of deportation, in which there is no attack upon the deportation order or upon the proceeding in which it was entered. Petitions to reopen, like motions for rehearing or reconsideration, are ... 'intimately and immediately associated' with the final orders they seek to challenge."
 
 
 13
 Cheng Fan Kwok, 392 U.S. at 217, 88 S.Ct. at 1976-77.
 
 
 14
 On the other hand, discretionary determinations not made in the course of a deportation proceeding are not within the exclusive ambit of the courts of appeals. Cheng Fan Kwok, 392 U.S. at 209, 211-16, 88 S.Ct. at 1973-76 (application for stay of deportation); see also Che-Li Shen v. INS, 749 F.2d 1469, 1472 (10th Cir.1984) (application to adjust status); see generally Carvajal-Munoz v. INS, 743 F.2d 562, 566-67 (7th Cir.1984).
 
 
 15
 Here, petitioners do not seek review or directly attack the validity of a final order of deportation. Petitioners concede their deportability for the reasons given when the deportation orders were entered. See Brief of Appellants at 31. Their claims, which are based on the criteria and procedures for obtaining asylum, do not constitute challenges to determinations made during or incident to their deportation proceedings. Rather, each of the claims concerns independent and collateral relief from deportation orders whose validity is uncontested.
 
 
 16
 Although petitioners' due process claims attack the constitutionality of regulations governing motions to reopen, their claims constitute a general attack upon the regulations and do not involve appeals from denials of motions to reopen or determinations made incident to a motion to reopen. See Haitian Refugee Center v. Smith, 676 F.2d 1023, 1032-33 (11th Cir.1982) (district court jurisdiction over constitutional challenge to "program, pattern or scheme" by INS officials in conducting deportation and asylum proceedings for Haitian aliens), aff'g as modified Haitian Refugee Center v. Civiletti, 503 F.Supp. 442, 457-61 (S.D.Fla.1980), overruled on other grounds sub nom. Jean v. Nelson, 727 F.2d 957 (11th Cir.1984) (en banc), aff'd, --- U.S. ---, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). Petitioners' claims, which challenge the general procedures governing motions to reopen when such motions are based on asylum claims, bear no relation to their individual final orders of deportation. Thus, exclusive jurisdiction does not lie in this court under the standards of Foti, Giova, and Cheng Fan Kwok.
 
 
 17
 Our inquiry cannot end here, however, because the Supreme Court has held that "the term 'final orders' in Sec. 106(a) 'includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing.' " INS v. Chadha, 462 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983) (quoting Chadha v. INS, 634 F.2d 408, 412 (9th Cir.1980)). The court of appeals was there held to have exclusive jurisdiction over a suit challenging a section of the Act which authorized a legislative veto of a decision by the Attorney General to suspend a particular alien's deportation. The Court reasoned that "Chadha's deportation stands or falls on the validity of the challenged veto" and that "the relief he seeks--cancellation of deportation--is plainly inconsistent with the deportation order." Chadha, 462 U.S. at 938-39, 103 S.Ct. at 2778.
 
 
 18
 Applying these standards, we hold that petitioners' claims do not concern matters on which the validity of the final orders is contingent. Those orders are based solely upon petitioners' having overstayed or failed to comply with the terms of their visas, and in no way "stand or fall" upon the outcome of their claims here. If petitioners should prevail on their due process claims, which attack the procedures used to entertain motions to reopen based on asylum grounds, they would gain only the right to remain in this country so long as it took the Attorney General to rule on their requests for asylum. If they should prevail on their claim that they have the right not to be deported where the criteria of either the Protocol or section 243(h) of the Act are met, they would secure only the right to a factual determination of whether the criteria are met in their particular cases. Even their ultimate success in obtaining asylum would not overturn the deportation orders because petitioners would have achieved collateral relief from the orders. They seek only "relief not inconsistent with" a valid deportation order. See Cheng Fan Kwok, 392 U.S. at 213, 88 S.Ct. at 1975 (quoting Mui v. Esperdy, 371 F.2d 772, 777 (2d Cir.1966)); accord Ghaelian v. INS, 717 F.2d 950, 952 (6th Cir.1983) (no appellate jurisdiction under Chadha over attack on constitutionality of INS regulation requiring Iranian aliens to report for status review).
 
 
 19
 We conclude that petitioners' claims based on the Act, the Protocol, and the Constitution are not direct attacks on their deportation orders. Accordingly, exclusive jurisdiction is not in this court, and the claims were therefore properly brought in the district court. Accord Chadha, 462 U.S. at 938-39, 103 S.Ct. at 2778; Cheng Fan Kwok, 392 U.S. at 212-14, 88 S.Ct. at 1974-75; Sadegh-Nobari v. INS, 676 F.2d 1348, 1350 (10th Cir.1982). That court has jurisdiction under section 279 of the Act, and 28 U.S.C. Sec. 1331 (1982) (federal question), see Jean v. Nelson, 727 F.2d 957, 980 n. 32 (11th Cir.1984) (en banc) (district court jurisdiction under 28 U.S.C. Sec. 1331 over Refugee Act of 1980 claim), aff'd, --- U.S. ---, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); Haitian Refugee Center v. Smith, 676 F.2d at 1033 & n. 22; Haitian Refugee Center v. Civiletti, 503 F.Supp. at 461; Stokes v. United States, INS, 393 F.Supp. 24, 27-28 (S.D.N.Y.1975) (district court jurisdiction under section 279 of the Act and 28 U.S.C. Sec. 1331 in suit challenging constitutionality of INS procedures concerning "immediate relative" classification status), as well as under its habeas corpus authority, see supra p. 1289.
 
 III.
 
 20
 JURISDICTION OF APPLICATION FOR ADMINISTRATIVE STAY
 
 
 21
 Salehi argues that the INS district director's denial of his application for an administrative stay of deportation pursuant to 8 C.F.R. Sec. 243.4[6] was arbitrary, capricious, and an abuse of discretion. Hakimzadeh alleges that the district director's failure to rule on his application for such a stay also was an abuse of discretion.[7]
 
 
 22
 An application to the district director for a stay of deportation is one of the forms of discretionary relief an alien subject to a final order may request after the conclusion of the deportation proceeding. The district director may grant a stay "in his discretion," and a denial is not appealable to the BIA. See 8 C.F.R. Sec. 243.4; see also Cheng Fan Kwok, 392 U.S. at 209, 88 S.Ct. at 1972.
 
 
 23
 As we have noted above, the Supreme Court has held that jurisdiction to review the denial of a stay of deportation pursuant to 8 C.F.R. Sec. 243.4, if the order was not entered in the course of deportation proceedings, is not vested exclusively in the courts of appeals under section 106(a) of the Act. See Cheng Fan Kwok, 392 U.S. at 212-16, 88 S.Ct. at 1974-76; accord Pang Kiu Fung v. INS, 663 F.2d 417, 419 (2d Cir.1981). The denial of Salehi's application for a stay was not entered in the course of deportation proceedings. Similarly, Hakimzadeh did not seek a stay in connection with deportation proceedings. They do not seek stays on the ground that their deportation orders are invalid. See Acosta v. Gaffney, 558 F.2d 1153, 1155-56 (3d Cir.1977). Their claims therefore may properly be heard in the first instance by the district court. See Cheng Fan Kwok, 392 U.S. at 210, 88 S.Ct. at 1973; Acosta, 558 F.2d at 1155-56; Dimaren v. INS, 398 F.Supp. 556, 558 n. 1 (S.D.N.Y.1974).[8]
 
 IV.
 CONCLUSION
 
 24
 The district court dismissed petitioners' actions solely on the ground that it was without subject matter jurisdiction. Because we conclude that this basis for dismissal was improper, we reverse and remand for further proceedings on the merits. On remand, petitioners are free to renew their request for preliminary relief and defendants are free to present other grounds for rejection of petitioners' claims.
 
 
 25
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Jean S. Breitenstein heard argument in this appeal but did not participate in the final decision
 
 
 [1]
 Section 243(h) provides in pertinent part:
 "(1) The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion."
 8 U.S.C. Sec. 1253(h)(1).
 
 
 [2]
 The Protocol Relating to the Status of Refugees is a United Nations multilateral agreement to which the United States became a party in 1968. The Protocol defines a refugee as one having a
 "well-founded fear of being persecuted for reasons of race, religion, nationality, membership of a particular social group or political opinion, is outside the country of his nationality and is unable or, owing to such fear, is unwilling to avail himself of the protection of that country...."
 Protocol Relating to the Status of Refugees, opened for accession Jan. 31, 1967, 19 U.S.T. 6223, 6225, T.I.A.S. No. 6577 (modifying and incorporating by reference Convention Relating to the Status of Refugees, done July 28, 1951, 189 U.N.T.S. 150, reprinted in 19 U.S.T. 6259, 6261). The Protocol provides that its signatories shall undertake to apply articles 2 to 34 of the Convention Relating to the Status of Refugees. Article 33 of the Convention provides that
 "No Contracting State shall expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion."
 Convention Relating to the Status of Refugees, reprinted in 19 U.S.T. at 6276. Article 3 requires that the provisions of the Convention be applied "without discrimination as to race, religion or country of origin." Id. at 6264.
 
 
 [3]
 The filing of a motion to reopen or to reconsider does not stay the execution of a deportation order, although the immigration judge having jurisdiction over the motion may specifically grant a stay of deportation. 8 C.F.R. Sec. 242.22 (1985); see also id. Secs. 3.2, 103.5, 208.11
 
 
 [4]
 Section 279 of the Act provides that "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter." 8 U.S.C. Sec. 1329
 
 
 [5]
 Petitioners were actually arrested, and their current liberty results from injunctions entered against the INS. They are therefore "in custody" within the meaning of Sec. 106(a)(9) of the Act. See Hensley v. Municipal Court, 411 U.S. 345, 351-52, 93 S.Ct. 1571, 1575, 36 L.Ed.2d 294 (1973). We need not, and do not decide whether, absent arrest, the restraint on liberty resulting from the entry of a final order of deportation subjects an alien to "custody" under Sec. 106(a)(9)
 
 
 [6]
 "Sec. 243.4 Stay of deportation
 Any request of an alien under a final administrative order of deportation, except a request for withholding of deportation pursuant to section 243(h) of the Act, shall be filed on Form I-246 with the district director having jurisdiction over the place where the alien is at the time of filing. The district director, in his discretion, may grant a stay of deportation for such time and under such conditions as he may deem appropriate. Written notice of the disposition of the alien's request shall be served upon him and any notice of denial shall include specific reasons therefor; however, neither the making of the request nor the failure to receive notice of disposition of the request shall relieve the alien from strict compliance with any outstanding notice to surrender for deportation. Denial by the district director of a request for a stay is not appealable but such denial shall not preclude the Board from granting a stay in connection with a motion to reopen or a motion to reconsider as provided in Part 3 of this chapter, nor such denial preclude the special inquiry officer, in his discretion, from granting a stay in connection with, and pending his determination of, a motion to reopen or a motion to reconsider a case falling within his jurisdiction pursuant to Sec. 242.22 of this chapter, and also pending an appeal from such determination.
 
 
 [8]
 C.F.R. Sec. 243.4
 
 
 [7]
 The district judge dismissed the consolidated cases in their entirety, giving as his only reason lack of jurisdiction. The Government correctly concedes the general propriety of district court jurisdiction over claims of this nature. The Government argues nonetheless that the district court properly dismissed the claims because under 8 C.F.R. Sec. 243.4 the district director has no jurisdiction to consider requests for stays of deportation which are based upon claims under Sec. 243(h) of the Act, 8 U.S.C. Sec. 1253(h). Although 8 C.F.R. Sec. 243.4 does expressly preclude the district director from considering such requests, we believe the court had jurisdiction to decide, and should have decided, whether Salehi's and Hakimzadeh's applications were based solely upon Sec. 243(h) of the Act and, if they were not, whether the district director abused his discretion
 
 
 [8]
 Our conclusion is consistent with Romero-Carmona v. United States Dep't of Justice, 725 F.2d 104, 105 (10th Cir.1984), which held only that we were without jurisdiction to review the district director's denial of an application for a stay of deportation