**Procio Rivero PILAPIL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 270–69.**

United States Court of Appeals,
Tenth Circuit.

March 20, 1970.

Rehearing Denied April 27, 1970.

John A. Kintzele, Denver, Colo., for petitioner.

Leonard W. D. Campbell, Denver, Colo. (James L. Treece, U. S. Atty., and Gordon L. Allott, Jr., Asst. U. S. Atty., Denver, Colo., with him on the brief) for respondent.

Before HICKEY and HOLLOWAY, Circuit Judges, and EUBANKS,* District Judge.

HICKEY, Circuit Judge.

This case arises out of a petition to review an order of The Board of Immigration Appeals as provided for by Section 106(a) of the Naturalization and Immigration Act of 1952 (hereinafter the Act), 8 U.S.C. § 1105a [1] as amended (1961). The Board order dismissed an appeal from the decision of a Special Inquiry Officer in a deportation proceeding which found that "after admission as a nonimmigrant [student] under Section 101(a) (15) of said act [he] failed to comply with the conditions of the nonimmigrant's status under which he

---

* Sitting by designation.

1. 8 U.S.C. § 1105a provides: "The procedure described by, and all the provisions of sections 1031–1042 of Title 5, shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title or comparable provisions of any prior Act, except that * * *."

was admitted," that he was therefore deportable pursuant to Section 241(a) (9) of the Act, and that he was not eligible for requested permission to remain permanently as an immigrant with a worldwide quota preference. The officer also denied Pilapil's application for voluntary departure.

Pilapil conceded his deportability under Section 241 of the Act and does not here contest this aspect of the officer's finding. Likewise, he does not argue that the Special Inquiry Officer and the Board of Immigration Appeals abused their discretion in denying him the right of voluntary departure from the country. Instead, Pilapil has consolidated the twelve points relied on in his petition for review to the following four issues:

1. Whether petitioner had a right to counsel in the deportation hearing and whether that right was violated?

2. What evidence of, or notice of, the conditions allegedly not complied with must be taken at the administrative hearing or made part of the record?

3. Whether the statutory subsection [8 U.S.C. § 1251(9)] is too vague and does it involve an unconstitutional delegation?

4. Does it violate due process to prohibit a lawfully admitted "nonimmigrant" student from working without first obtaining permission to do so from the Immigration and Naturalization Service?

None of these issues were specifically raised in the hearing which was conducted pursuant to the provisions contained in 8 U.S.C. § 1252(b) and consequently are not specifically reflected in the record upon which the order is based. 8 U.S.C. § 1105a(a) (4) [2] limits us to consideration of the administrative record in ruling on the petition. Thus, we must decide initially whether or not under the limited review statute issues not presented in the administrative record to the executive officer to whom authority has been delegated is outside the record and not reviewable by us.

▇ At the outset it is clear that Pilapil could get judicial review of these issues by writ of habeas corpus when taken into custody pursuant to the deportation order. 8 U.S.C. § 1105a(a) (9).[3] Foti v. Immigration and Naturalization Service, 375 U.S. 217, 231, 84 S. Ct. 306, 11 L.Ed.2d 281 (1963). It is not clear, however, that the availability of habeas corpus takes consideration of these issues beyond our reach.

The jurisdictional reach of § 1105a has been considered on three occasions by the Supreme Court. Acknowledging the statutory language "[t]he procedure * * * shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation * * * made against aliens within the United States * * * except that—," the court expanded the reach of the exclusive jurisdiction in the Court of Appeals to include a request made in the course of a section 242(b) deportation proceeding, 8 U.S.C. § 1252(b), for a suspension of deportation under section 244(a) (5), 8 U.S.C. § 1254(a) (5), (1964). Foti, supra. Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) decided that the Court of Appeals also has exclusive jurisdiction to review a denial of a motion to reopen a section 242(b) proceeding. In Cheng Fan Kwok v. Immigration & Naturalization Service, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968) it was held that the exclusive jurisdiction of the Court of Appeals was

2. 8 U.S.C. § 1105a(a) (4) provides: "except as provided in clause (B) of paragraph (5) of this subsection, the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive;"

3. 8 U.S.C. § 1105a(a) (9) provides: "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings."

limited to orders arising from the proceedings for deportation provided in section 242(b). We are limited by these to review of questions arising from the proceedings as reflected in the administrative record.

 Thus, if Pilapil were protesting the factual determination that he is deportable or the refusal to grant him the privilege of voluntary departure, our jurisdiction would be clear. In that case, the petitioner, to have the decision overturned, would have to show that the decision is without rational basis and is arbitrary, capricious or an abuse of discretion. *Foti, supra.*

 The tenor of the issues raised by Pilapil, however, is not that the deportation order is not called for by the facts given, but rather that to deport him under the circumstances here would be unconstitutional. Recognizing that these issues could be raised in a habeas corpus proceeding, we do not feel that this precludes the court from considering them.

As was stated by the Ninth Circuit in reviewing an exercise of discretion by an immigration official, "the function of this court is limited to insuring that this discretion is not abused, and that petitioner has been afforded a full and fair hearing that comports with due process." Antolos v. Immigration and Naturalization Service, 402 F.2d 463, 464 (9th Cir. 1968). *See also,* Jarecha v. Immigration and Naturalization Service, 417 F.2d 220, 225 (5th Cir. 1969), Yiannopoulos v. Robinson, 247 F.2d 655, 656–657 (7th Cir. 1957).

 The facts needed to treat the issues raised by Pilapil are set out in the administrative record. Nothing in the limited jurisdictional statute is explicit in directing that only issues raised at the hearing may be raised on a petition for review. While the issues raised do not question Pilapil's deportability under the statute, if they are well taken, the order itself would be voided. *See* Ferrante v. Immigration and Naturalization Service, 399 F.2d 98, 103 (6th Cir. 1968) and cases cited. Because constitutional issues are concerned and because of the outcome we reach, we hold that we are not precluded from considering the issues raised by Pilapil.

The administrative record reflects that Pilapil appeared without counsel for a deportation hearing on January 28, 1969. He was advised he had a right to counsel at his own expense and exercised the right. The hearing was postponed for the purpose of permitting him to obtain a lawyer. Approximately 30 days thereafter, on February 25, 1969, petitioner appeared with Mr. Daniel H. Schoedinger, who identified himself as follows: "I am a law student at the University of Denver. I am here on behalf of the Legal Aid Society for Mr. Pilapil."

 Section 242(b) (2) of the Act provides "the alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as he shall choose; \* \* \*." It is contended by petitioner that Schoedinger did not satisfy the requirements of a "counsel" because he was not authorized to act as an attorney in a deportation hearing.

2 Colo.Rev.Stat. § 12–1–19 (1963): "Students of any law school which has been continuously in existence for at least ten years prior to the passage of this section and which maintains a legal aid dispensary where poor persons receive legal advice and services, shall when representing said dispensary and its clients and then only be authorized to appear in court as if licensed to practice."

Pilapil argues that the foregoing provision does not qualify the law student to act as counsel in Federal Immigration proceedings. The contention may be true because deportation proceedings are administrative rather than judicial. Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082 (1939).

8 C.F.R. § 292.1(c) (1958) provides: "Accredited representatives. A person may be represented by an accredited

representative of an organization described in section 1.1(j) of this chapter."

8 C.F.R. 1.1(j) (1965) provides: "The term 'representative' means a person representing a religious, charitable, social-service, or similar organization established in the United States and recognized as such by the Board, or a person described in § 292.1(b), (d), or (h) of this chapter." At the hearing now questioned the petitioner's representative identified himself in the record as being there "on behalf of the Legal Aid Society."

Legal Aid Society is "[a]n organization providing free help in legal guidance and service to persons who cannot afford a lawyer." Random House Dictionary, p. 818 (Unabridged ed. 1966). Thus, Pilapil's representative qualifies.

The thrust of present counsel's complaint against "the law student" is that he permitted an admission of deportability. However, the Supreme Court in *Foti, supra* 375 U.S. at 227, 84 S.Ct. at 313 footnote 13, recognized "[d]eportability is conceded in about 80% of the cases." It is therefore evident that the strategy of the petitioner's counsel in representing his client places him with the great majority of experienced representatives. The argument is without merit in view of the record made by the petitioner's legal aid counsel, and in view of the fact that Pilapil himself when testifying conceded the elements of deportability.

The specifics of the order to show cause answer the second issue above set forth. In the order, Pilapil is identified as a native and citizen of the Philippines, not a citizen or national of the United States. Violation of section 241(a) (9) of the Immigration and Naturalization Act is charged, "in that after admission as a nonimmigrant under section 101(a) (15) of said act you failed to comply with the conditions of the

nonimmigrant status under which you were admitted. You have been employed without permission as a busboy for the Cherry Creek Inn, Denver, Colorado, as of October 29, 1968, at $1.25 an hour." After the foregoing had been read to petitioner in the presence of his representative, he replied, "I think I understand. Q. You think so? A. Yes." This, together with the documentary evidence contained in the record, is convincing that evidence and actual notice of the conditions are a part of the record under review. Therefore the second contention is without merit.

It is next claimed that the section under which the charge[4] in the order to show cause is alleged is vague and involves an unconstitutional delegation.

■ This claim is premised on the presumption that the statute as it relates to deportation is penal and therefore the criminal standards should be applied. A deportation proceeding is not a criminal prosecution. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Harisiades v. Shaughnessy, 342 U.S. 580, 594, 72 S. Ct. 512, 96 L.Ed. 586 (1952). The assertion was reiterated and confirmed in Woodly v. Immigration Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966).

Fed.R.Civ.P. 12(e) provides a remedy for vague or uncertain pleading. If the order to show cause presented a question of the condition that had been violated, a more definite or precise statement could have been obtained. We can conceive of no more definite and precise allegation in the order than that set forth above that petitioner had been employed without obtaining permission, a condition to continued status as a nonimmigrant student.

The delegation of authority is also questioned. 8 U.S.C. § 1184(a) provides in part: "The admission to the United States of any alien as a nonimmigrant

---

4. 8 U.S.C. § 1251(9) provides: " * * * was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which it was changed pursuant to section 1258 of this title, or to comply with the conditions of any such status;"

shall be for such time and under such conditions as the Attorney General may by regulations proscribe, including * * *." The regulations, particularly 8 C.F.R. § 214.2(f) (3) which deals with special requirements for the admission of students, spell out the conditions that a student alien must maintain to continue in the nonimmigrant alien status granted at the time of admission. The record is replete with requests to allow employment made by petitioner and denied by the Director. These are convincing that petitioner was aware of these conditions and the loss of status effected by the breach of them. "The rule as to a definite standard of action is not so strict in cases of the delegation of legislative power to executive boards and officers." Mahler v. Eby, 264 U.S. 32, 41, 44 S.Ct. 283, 287, 68 L.Ed. 549 (1924).

"The power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, 'with such opportunity for judicial review of their action as congress may see fit to authorize or permit.' " Carlson v. Landon, 342 U.S. 524, 537, 72 S.Ct. 525, 532, 96 L.Ed. 547. Cf. Jarecha v. Immigration and Naturalization Service, 417 F.2d 220 (5th Cir. 1969).

The delegation is not constitutionally proscribed.

The final contention urged is that alien petitioner had a constitutional right to work without authorization. The authorities cited by petitioner concern immigrants lawfully residing in the United States. These cases are the key to the contention. Petitioner admits he is a nonimmigrant with alien status for the sole purpose of being a student in the United States admitted subject to specific conditions.

Before this limited status was granted to respondent, he had no rights under the Constitution, laws or government of the United States. As a citizen and national of another country his rights were established by the alien law peculiar to his native domicile. The limited status given him as an alien student had some specific conditions attached. One was that he had sufficient money to insure that he would not become a public charge nor be required to enter into the labor market of this country. He agreed to these conditions to obtain the privilege accorded the limited status. He was not coerced to forego rights he otherwise would have had. He acquired only the limited status established by the conditions. 8 U.S.C. § 1251(a) provides:

"Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who * * * (9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which it was changed pursuant to section 1258 of this title, or to comply with the conditions of any such status;"

In addition, 8 C.F.R. § 214.1(a) provides, in relation to maintenance of nonimmigrant status, that:

"Every nonimmigrant alien applicant for admission or extension of stay in the United States shall * * * agree that he will abide by all the terms and conditions of his admission or extension, and that he will depart at the expiration of the period of his admission or extension or on abandonment of his authorized nonimmigrant status. * * *"

Therefore no rights under the Constitution of the United States relative to equal opportunity of employment are involved. Wei v. Robinson, 246 F.2d 739 (7th Cir.), cert. denied, 355 U.S. 879, 78 S.Ct. 144, 2 L.Ed.2d 109 (1957).

Affirmed.