Ramiro Cruz BURQUEZ,
Petitioner-Appellant,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent-Appel-
lee.

No. 74–1418.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 24, 1975.

Decided April 4, 1975.

Leonard W. Burningham, Salt Lake City, Utah, for petitioner-appellant.

Robert E. Courtney, III, Dept. of Justice, Washington, D. C. (John L. Murphy, Chief, Government Regulations Section, Crim. Div., Washington, D. C., on the brief) for respondent-appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Ramiro Cruz Burquez (Cruz) appeals from a deportation order of August 30, 1973, ordering him deported to Mexico. Cruz was found to have violated Section 241(a)(13)[1] of the Immigration and Nationality Act which prohibits assisting, aiding or abetting the illegal entry of aliens into the United States.

The pertinent facts are not in dispute. Cruz was served an Order to Show Cause and Notice of Hearing charging him with violations of Section 241(a)(13) on May 31, 1973. The Order stated in part:

5. On or about March 5, 1973, near Agua Prieta, Son., Mexico, you entered into an agreement with Norberto FRANCO—Villicana, Eloy ARRIEGA —Mosqueda, Jesus ARRIEGA—Mosqueda, Miguel Angel RODRIGUEZ— Villicana, all aliens, that for the promise of a payment of money you would aid and assist them to enter the United States;

6. On or about March 5, 1973 you did escort _ _ _ and show the aliens a place where they could cross over the boundary into the United States;

\* \* \* \* \* \*

8. You did know at the time you aided, assisted the four Mexican aliens [set forth in paragraph 5] _ _ _ to enter the United States that they were not in possession of documents which would entitle them to enter the United States lawfully.

The reverse side of the Order to Show Cause notified Cruz that: (1) he was entitled to be represented by counsel at the hearing at no expense to the Government; (2) he was entitled to present written evidence and have witnesses appear for him; (3) he would be afforded an opportunity to present evidence, to examine the Government's evidence and to cross-examine the Government's witnesses; and (4) that his failure to appear at the hearing could result in his arrest and detention without further notice. The hearing was originally scheduled for June 28, 1973. However, it was subsequently rescheduled twice prior to being held on August 30, 1973.

During the initial stages of the hearing, the following colloquy occurred between Cruz and the Trial Judge:

THE TRIAL JUDGE: The purpose of this hearing is to decide whether or not you should be deported from the United States. Do you Understand?

A. Yes.

THE TRIAL JUDGE: At this hearing you have a right to be represented by an attorney or by any person authorized to practice in these proceedings. Do you understand?

A. Yes.

Q. Have you retained anyone to represent you for this hearing?

A. No.

Q. Are you willing to proceed with your hearing without an attorney and to speak for yourself?

A. I guess I am.

Q. Does that mean you do not wish to have an attorney?

A. I see no reason to. I can speak for myself.

THE TRIAL JUDGE: Very well, now you have certain other rights. You'll be given an opportunity to examine and object to the evidence against you, to submit evidence in your own behalf, and to question any witnesses that may appear. Do you understand?

A. Yes.

1.  8 U.S.C.A. § 1251(a)(13).

The Government's case consisted of the testimony of the four aliens Cruz was charged with assisting illegal entry into the United States. Their testimony established, inter alia, that they were introduced to Cruz as a man who could help them cross the border into the United States; that Cruz transported them in a car he possessed near the border; that Cruz agreed to take them to Idaho, and did take them as far as Utah when they were apprehended; and that they each agreed to pay Cruz for helping them cross the border and in transporting them to Idaho.

Cruz was afforded the opportunity to cross-examine each of the Government witnesses. He declined to cross-examine two of the witnesses. His examination of the other two witnesses was very brief:

> THE TRIAL JUDGE: Mr. Cruz, you have heard the witness testify. Do you wish to say anything?
>
> A. (Cruz) How could he imagine that I could bring someone without money. Why wouldn't I have collected there?
>
> THE TRIAL JUDGE: Well, Mr. Cruz, that is a statement rather than a question. Do you wish to question the witness?
>
> A. Well, I have no questions. I just didn't know him very well.
>
> \* \* \* \* \* \*
>
> THE TRIAL JUDGE: Mr. Cruz, you heard the testimony of this witness, did you wish to ask him any questions yourself?
>
> MR. CRUZ: No, I don't have any questions of him, only I want to ask him who this friend of mine is in Agua Prieta?
>
> A. (Witness): No, I don't know the man and I've never met him or anything and I don't know his name.

THE TRIAL JUDGE: Note that it was answered by the witness. Do you have anything further, Mr. Cruz?

A. No.

Cruz testified briefly in his defense. He denied escorting the four aliens from Mexico into Arizona. He did acknowledge that he had transported the men to Utah by auto, but that he did not realize the four men were illegally in the United States when he picked them up, but that "afterward they told me and because they were my countrymen I gave them a ride anyway."

Following the hearing, the Trial Judge rendered a decision ordering Cruz deported to Mexico. Thereafter, on September 10, 1973, Cruz, through counsel, filed a Motion for Reconsideration. This motion, filed without supporting affidavits as required by 8 C.F.R. § 103.5,[2] alleged that witnesses could testify in support of Cruz's contention that he did not assist the four aliens in crossing the border and that an attorney could properly cross-examine each of the four Government witnesses.

Upon the denial of this motion, Cruz filed a notice of appeal with the Board of Immigration Appeals alleging that he "was not able to present evidence which would corroborate his story," and that the evidence presented against him was insufficient to find him deportable. In dismissing his appeal the Board found:

> Our review of the record satisfies us that the hearing was fair, that deportability has been established by clear, convincing and unequivocal evidence ----. Our examination ---- discloses that when questioned as to whether he wished to proceed without an attorney he replied in the affirmative (Tr. p. 1). We find no evidence that the respondent did not intelligently waive his right to counsel. ---- Moreover, counsel's motion to reopen the proceedings fails to meet the clear

---

**2.** 8 C.F.R. § 103.5 provides in part:

   ---- A motion to reopen shall state the new facts to be proved at the reopened proceeding and shall be supported by affidavits or other evidentiary materials.

requirements[3] necessary for reopening under the regulations.

On appeal, Cruz contends: (1) that he was not afforded a fair hearing; and (2) the decision to deport was not based on reasonable, substantial, and probative evidence.

## I.

Cruz contends that he was not afforded a fair hearing. Under 8 U.S.C.A. § 1252 a special inquiry officer shall conduct proceedings to determine the deportability of any alien. This same section authorizes the Attorney General to promulgate regulations governing these proceedings:

> _ _ _ Such regulations shall include requirements that—(1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held; (2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, _ _ _ as he shall choose; (3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and (4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

Cruz contends that because of the rescheduling of the hearing on two different occasions, he was not afforded proper notice and that his waiver of counsel was made unknowingly, resulting in denial of his right to present evidence and to cross-examine the Government's witnesses. We must reject these contentions.

■ Even though the hearing was rescheduled on two different occasions, Cruz was afforded thirty (30) days' notice of the August 20, 1973 hearing, and approximately ninety (90) days' notice from the time he received the Order to Show Cause and Notice of Hearing and the actual hearing. Cruz did not request an extension of time prior to or during his hearing, nor did he present an argument of inadequate time for preparation within his Motion for Reconsideration or in his appeal to the Board of Immigration Appeals. Absent clear error, which is the case here, we will not consider this allegation, presented for the first time on this appeal. Taylor v. National Trailer Convoy, Inc., 433 F.2d 569 (10th Cir. 1970). Courts of appeals are disinclined to consider those matters which were not presented below and are raised for the first time after trial or on appeal. International Union of Operating Engineers, Local 953 v. Central National Life Insurance Company, 501 F.2d 902 (10th Cir. 1974); Gomes v. Williams, 420 F.2d 1364 (10th Cir. 1970).

■ Cruz argues that his waiver of counsel was unknowing, and therefore invalid. He does, however, acknowledge that deportation proceedings are civil rather than criminal in nature, Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952), and that the fact that an alien is without counsel is not considered a denial of due process, if he does not show that he was prejudiced thereby. De Bernardo v. Rogers, 102 U.S.App.D.C. 382, 254 F.2d 81 (1958), cert. denied 358 U.S. 816, 79 S.Ct. 24, 3 L.Ed.2d 58 (1958).

■ Deportation hearings have long been considered administrative proceedings. Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082 (1939). They are civil in nature and are not subject to the constitutional safeguards of criminal actions. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Jolley v. Immigration and Naturalization Service, 441 F.2d 1245 (5th Cir. 1971), cert. denied 404 U.S. 946, 92 S.Ct. 302, 30

---

**3.** As noted _supra_, footnote 2, supporting affidavits were not filed pursuant to 8 C.F.R. § 103.5. Also, 8 C.F.R. § 242.22 precludes reopening unless the evidence sought to be offered is shown to be material and could not have been discovered or presented at the hearing. Such was not shown here.

L.Ed.2d 262 (1971); Lavoie v. Immigration and Naturalization Service, 418 F.2d 732 (9th Cir. 1969), cert. denied 400 U.S. 854, 91 S.Ct. 72, 27 L.Ed.2d 92 (1970). There is no right to appointed counsel in deportation proceedings. Tupacyupanqui-Marin v. Immigration and Naturalization Service, 447 F.2d 603 (7th Cir. 1971); Murgia-Melendrez v. Immigration and Naturalization Service, 407 F.2d 207 (9th Cir. 1969).

■ Cruz stated without equivocation that he could "speak for myself", that he understood his rights of presenting evidence, cross-examining witnesses, and objecting to the evidence presented by the Government. His actions, we hold, effectively waived any right he may have had to counsel, Strantzalis v. Immigration and Naturalization Service, 465 F.2d 1016 (3rd Cir. 1972). And once he waived his right to counsel, the subsequent hearing without counsel was not invalid. Velasquez Espinosa v. Immigration and Naturalization Service, 404 F.2d 544 (9th Cir. 1968).

The result reached here is mandated, we believe, by our prior holdings that a deportation proceeding is not a criminal proceeding. In Pilapil v. Immigration and Naturalization Service, 424 F.2d 6 (10th Cir. 1970), cert. denied 400 U.S. 908, 91 S.Ct. 152, 27 L.Ed.2d 147 (1970), we noted, in an opinion authored by the late Judge J. J. Hickey:

> This claim is premised on the presumption that the statute as it relates to deportation is penal and therefore the criminal standards should be applied. A deportation proceeding is not a criminal prosecution.
>
> 424 F.2d at 10.

■■ Our review is limited to insure that petitioners such as Cruz have been afforded full and fair hearings comporting with due process. Vassiliou v. District Director of Immigration and Naturalization Service, 461 F.2d 1193 (10th Cir. 1972). We hold, that where, as here, deportability is clearly established by the preponderance of the evidence, and where it is doubtful that counsel could have obtained a different result in the administrative proceedings, the administrative ruling must be affirmed, Henriques v. Immigration and Naturalization Service, Board of Immigration Appeals, 465 F.2d 119 (2nd Cir. 1972), cert. denied 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973). To hold otherwise would involve judicial activism into a political, legislative and/or executive arena. See Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952).

## II.

■ Cruz contends that his deportation was not established by reasonable, substantial, and probative evidence. This allegation is not predicated on a challenge or attack of the efficacy or credibility of the testimony of the four Government witnesses, but rather on matters not reflected in the record nor presented below. In view of Cruz's admission that he did bring the four aliens into Utah and that he did so even after he knew that they were not legally in the United States, coupled with the testimony of the four aliens, we hold that reasonable, substantial, and probative evidence established his deportability.

The order of deportation is affirmed.