**Ghassan EL–YOUSSEF, Petitioner,**

v.

**Edwin MEESE, III, Attorney General for the United States of America, and Immigration and Naturalization Services, Respondents.**

Civ. A. No. 87–2530.

United States District Court,
D. Kansas.

Jan. 20, 1988.

Bertica Dominquez–Calbi, Kansas City, Mo., Donald T. Taylor, Scott & Daily, Chartered, Kansas City, Kan., for petitioner.

Robert S. Streepy, Asst. U.S. Atty., Kansas City, Kan., for respondents.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This action was brought by the petitioner, Ghassan El–Youssef, for habeas corpus relief pursuant to 28 U.S.C. § 2241 and 8 U.S.C. § 1105a(a)(9). Petitioner contends that he is being detained unlawfully by immigration authorities subsequent to the issuance of an Order of Deportation. The matter is before the court on the respondents' motion to dismiss and the petitioner's motion to transfer.

The facts, as alleged in the pleadings, are as follows. Petitioner is a Palestinian and a resident of the United Arab Emirates. The pleadings also indicate that petitioner is a citizen of Lebanon. Petitioner entered the United States on August 14, 1982, on a visitor's visa. Under that visa, he was authorized to remain in the United States until August 27, 1984. Shortly before his visa expired, petitioner filed a Request for Asylum in the United States. In this application, petitioner indicated to the Immigration and Naturalization Service (INS) that he would be persecuted if he returned to Lebanon because he was a Palestinian, a Muslim and a former soldier in the Abu–Dhabi military. On January 1, 1985, the Office of Asylum Affairs within the State Department sent a written opinion to the INS district director in Kansas City, Missouri, pursuant to 8 C.F.R. § 208.7. In this opinion, the Office of Asylum Affairs stated that the petitioner had failed to establish a "well founded fear of persecution" that would entitle him to asylum under the terms of the United Nations Convention and Protocol Relating to the Status of Refugees.

On January 21, 1985, the District Director notified the petitioner by letter that the INS intended to deny his application for political asylum. In that letter, the District Director gave the petitioner fifteen days in which to offer additional documentary evidence in support of his application. When no other evidence was presented, the District Director informed the petitioner that his request for asylum was denied because he failed to establish that he was a "refugee." Petitioner was granted until February 23, 1985, to depart voluntarily from the United States; however, petitioner did not leave the country by that date. Consequently, the INS issued an Order to Show Cause and Notice of Hearing on February 25, 1985; petitioner was ordered to appear before an immigration judge to show cause why he should not be deported.

On March 18, 1986, a deportation hearing was held. For some unspecified reason, the petitioner did not attend that hearing. However, petitioner's counsel was present. The attorney requested a continuance due to the petitioner's absence, but the immigration judge denied the request and commenced the proceeding. Counsel renewed the petitioner's request for asylum; this request was denied by the immigration judge because the petitioner was not present to testify or to produce evidence on his behalf. The immigration judge found the petitioner to be deportable and granted him voluntary departure on or before April 18, 1986. The immigration judge also entered an alternate order deporting petitioner to Lebanon. Petitioner again failed to depart voluntarily. The INS subsequently issued a Warrant of Deportation on April 22, 1986. A Deportation Order was entered on the same date by the INS, stating that arrangements had been made for petitioner's departure to Lebanon from Kansas City, Missouri, on May 6, 1986. A copy of the Deportation Order was sent to the petitioner by certified mail, return receipt requested; the receipt was returned to the INS signed by the petitioner and dated April 29, 1986. Petitioner still did not leave the country.

Petitioner was subsequently arrested by INS officials pursuant to the Warrant of Deportation on October 29, 1987. On November 2, 1987, a petition for writ of habeas corpus and motion for temporary restraining order were filed in this court. The court entered a temporary restraining order prohibiting the petitioner's deportation and set a hearing on November 3, 1987. At that hearing, we dissolved the

restraining order and granted petitioner five days in which to file an amended petition. This court also requested a memorandum of law on the issue of the court's jurisdiction in this matter. After petitioner filed these documents, the United States filed a motion to dismiss; plaintiff did not file a separate response to the government's motion. Petitioner subsequently filed a motion to transfer the action to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a).

## I. Motion to Transfer.

The court first will address the petitioner's motion to transfer this action to the United States District Court for the Western District of Missouri. The grounds for the transfer, as stated by the petitioner, are that his lead counsel is an attorney licensed in the state of Missouri and that he can no longer afford to pay for local counsel to continue this proceeding in Kansas. He also contends that venue in Missouri would be more convenient to the parties.

Title 28, United States Code, Section 1404(a) permits a district court to transfer any civil action for the convenience of the parties and witnesses to any district or division *where the action might have been brought.* The habeas corpus statutes give federal courts the power to issue writs only "within their respective jurisdictions." 28 U.S.C. § 2241(a). Due to this restriction, the petitioner's custodian must be within the territorial jurisdiction of the court issuing the writ. *Schlanger v. Seamans,* 401 U.S. 487, 489, 91 S.Ct. 995, 997, 28 L.Ed.2d 251 (1971). The basis for this jurisdictional requirement is the fact that the writ acts upon the person holding the petitioner and not on the petitioner himself. *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 494–95, 93 S.Ct. 1123, 1129–30, 35 L.Ed.2d 443 (1973). The issue of proper venue in habeas corpus actions involving persons detained by immigration authorities is not clear. *See, e.g., Umanzor v. Lambert,* 782 F.2d 1299, 1302 (5th Cir.1986); *Ledesma–Valdes v. Sava,* 604 F.Supp. 675, 679 (S.D.N.Y.1985).

At the time this action was filed, the petitioner was in custody and detained at the Wyandotte County jail within the District of Kansas. Petitioner has made no showing that the action for habeas corpus relief could have been brought in the Western District of Missouri on November 2, 1987. Even if the action could have been brought in Missouri, the petitioner has not shown that convenience of the parties and witnesses requires such a transfer. For these reasons, the petitioner's motion to transfer pursuant to section 1404(a) will be denied.

## II. Motion to Dismiss.

The court must now turn to the respondents' motion to dismiss. The government contends that this court lacks subject matter jurisdiction over all or most of the petitioner's claims. Specifically, the INS argues that federal law vests exclusive jurisdiction over these types of claims with the courts of appeal.

The Immigration and Nationality Act of 1961 gave federal district courts general jurisdiction over all civil and criminal causes arising under the immigration statutes. 8 U.S.C. § 1329. The grant of jurisdiction under section 1329, however, is limited by section 106(a) of the Act [codified at 8 U.S.C. § 1105a(a)]. Section 1105a(a) gives exclusive jurisdiction to the court of appeals over all petitions for judicial review of "final orders of deportation" entered against persons pursuant to administrative proceedings under section 242(b) [8 U.S.C. § 1252(b)]. Notwithstanding the "exclusive" jurisdiction given to the courts of appeals, a later provision of section 1105a(a) states that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(9).

To resolve this motion to dismiss, the court must utilize a two-step analysis. First, we must decide what claims, if any, made by the petitioner constitute "final orders of deportation" within the meaning of section 1105a(a). If none of the claims are so classified, the exclusive jurisdiction

provision is inapplicable. If, however, any of petitioner's claims attack final deportation orders, we are faced with a serious question: whether a district court has habeas corpus jurisdiction to hear such claims in light of the statute's grant of "exclusive" jurisdiction to the court of appeals. The court will address these questions in turn.

## A. Nature of Petitioner's Claims.

In his petition for writ of habeas corpus, the petitioner seems to make two claims: (1) that the immigration judge abused his discretion in denying the petitioner's application for asylum; and (2) that the petitioner's deportation hearing lacked due process. In the memorandum in support of jurisdiction, petitioner also makes the argument that the Attorney General abused his discretion in ordering the petitioner to be detained pending deportation. The respondent argues that all or most of these claims constitute final deportation orders and that judicial review is only available in the court of appeals.

The United States Supreme Court has discussed the meaning of the phrase "final orders of deportation" as used in section 1105a(a). According to the Court, final deportation orders include "all determinations made during and incident to the administrative proceeding" conducted by the immigration judge under section 1252(b). *Foti v. I.N.S.*, 375 U.S. 217, 229, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (1963). The Court has also decided that "the term 'final order' in § 106(a) [8 U.S.C. § 1105a(a)] 'includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing.'" *I.N.S. v. Chadha*, 462 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983). Jurisdiction under section 1105a(a) extends to all claims for relief that are "plainly

inconsistent with the deportation order." *Id.* at 938–39, 103 S.Ct. at 2777–78.

The types of orders that come within the ambit of section 1105a(a) have been the subject of much litigation.[1] Generally, this provision includes all decisions pertaining to a person's deportability. Final deportation orders also include discretionary decisions to suspend or withhold deportation[2] when such determinations are made during the deportation proceedings. *See Cheng Fan Kwok v. I.N.S.*, 392 U.S. 206, 216–17, 88 S.Ct. 1970, 1976–77, 20 L.Ed.2d 1037 (1968); *Salehi v. District Director*, 796 F.2d 1286, 1290 (10th Cir.1986). Also included in this category are decisions denying motions to reopen deportation proceedings. *Cheng Fan Kwok*, 392 U.S. at 216, 88 S.Ct. at 1976; *Motamedi v. I.N.S.*, 713 F.2d 575, 575–76 (10th Cir.1983).

In this case, petitioner makes three claims. First he seeks judicial review of the Attorney General's decision to detain him pending deportation. Section 1252(a) gives the Attorney General the authority to arrest and detain persons pending a determination of deportability. That provision also grants the Attorney General discretion in deciding whether to release aliens on bond or conditional parole pending such determinations. We conclude that the decision of the Attorney General to detain or release an individual pending deportation procedures does not amount to a "final deportation order." First, the decision to detain or release in these circumstances must be made separate from any determinations relating to deportability. *See* 8 C.F.R. § 242.2(b). In addition, section 1105a(a) gives the courts of appeals exclusive jurisdiction to review final deportation orders pursuant to section 1252(b). As stated earlier, detention/release decisions are made pursuant to section 1252(a). For these reasons, the court finds that this

---

1. See generally annot., *What Constitutes "Final Deportation Order" Appealable to United States Court of Appeals Under § 106 of Immigration and Nationality Act (8 U.S.C.S. § 1105a),* 65 A.L.R.Fed. 742 (1983).

2. *See* 8 U.S.C. § 1254 and § 1253(h). The Attorney General may suspend an individual's deportation under section 1254 in "hardship cases" if certain criteria are met. On the other hand, the withholding of deportation under section 1253(h) is permitted in the Attorney General's discretion if the person shows a strong likelihood of persecution if he/she was deported to a particular country.

claim does not involve a final deportation order. *See Gornicka v. I.N.S.*, 681 F.2d 501, 504–05 (7th Cir.1982).

■ The petitioner's second claim is that the immigration judge abused his discretion when he denied petitioner's application for asylum.[3] The Attorney General is given the discretion to grant asylum to individuals that meet the statutory requirements. 8 U.S.C. § 1158(a). As a general rule, the District Director's denial of an application for asylum is not considered a final deportation order under section 1105a(a). *See Fleurinor v. I.N.S.*, 585 F.2d 129, 135–36 (5th Cir.1978). However, when an application for asylum is denied *in the course of a deportation hearing*, the immigration judge's decision falls within the "exclusive" jurisdiction of the court of appeals. *Carvajal–Munoz v. I.N.S.*, 743 F.2d 562, 566 (7th Cir.1984); 18A Fed.Proc., L.Ed. § 45:590, at 173. As previously stated, "final deportation orders" include all determinations made during a deportation proceeding. *Foti*, 375 U.S. at 229, 84 S.Ct. at 313. In this case, petitioner renewed his application for asylum at his deportation hearing and is seeking review of the immigration judge's denial of that application. Therefore, the denial of asylum is a decision within the scope of section 1105a(a).

■ The final claim made by the petitioner is that his deportation hearing was conducted in such a manner that he was denied due process. It is not clear from the petition whether this claim is directed at the deportation decision, the decision denying asylum or both. Both these determinations were made during the deportation proceeding and are considered "final orders of deportation." *I.N.S. v. Chadha*, 462 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed. 2d 317 (1983). Thus, petitioner's due process claim is plainly inconsistent with a "deportation order" as defined by the United States Supreme Court. *See, e.g., I.N.S. v. Chadha*, 462 U.S. at 937–38, 103 S.Ct. at

2777 (constitutional challenge to deportation order with section 1105a(a)). Therefore, under the law as defined by the United ed States Supreme Court, this claim comes within the jurisdiction of section 1105a(a).

### B. *Jurisdiction Issue.*

As discussed above, two of petitioner's three claims fall within the scope of section 1105a(a) as challenges to final deportation orders. We clearly have jurisdiction to review the Attorney General's decision to detain the petitioner since it does not come within the court of appeals' exclusive jurisdiction provided in section 1105a(a). As to the two claims which do fall within section 1105a(a)'s jurisdictional provisions, the question arises as to whether a district court nevertheless has jurisdiction to review the immigration judge's decisions under section 1105a(a)(9), the provision creating habeas corpus jurisdiction. We must decide whether section 1105a(a)(9): (1) extends to all claims made by persons held in custody under deportation orders; or (2) is available to review only those claims that do not directly challenge "final orders of deportation." In other words, the question is whether the habeas corpus jurisdiction established in section 1105a(a)(9) is limited to only those matters that fall outside the scope of the exclusive jurisdiction provision in section 1105a(a).

Several courts have wrestled with the question of the interrelationship between the "exclusive jurisdiction" given to the courts of appeals and the habeas corpus provision in section 1105a. The Tenth Circuit has not directly addressed this issue. In *Salehi v. District Director of the Immigration & Naturalization Service*, 796 F.2d 1286 (10th Cir.1986), the Tenth Circuit reserved ruling on this particular issue. *Id.* at 1289. However, dicta in one Tenth Circuit decision may give some indication of the direction that the court would go. *See Pilapil v. I.N.S.*, 424 F.2d 6, 8 (10th

---

**3.** The district director and the immigration judge both denied petitioner's applications for asylum because he failed to prove he was a "refugee"—*i.e.*, that he had a well-founded fear of persecution if he was returned to Lebanon.

Therefore, the denial of asylum was not a *discretionary* decision; rather, it was a decision finding that the petitioner did not meet the legal requisites to be considered for asylum.

Cir.), *cert. denied,* 400 U.S. 908, 91 S.Ct. 152, 27 L.Ed.2d 147 (1970).

Those courts that have directly addressed the issue have relied mainly on the historical facts leading to the enactment of section 1105a and the legislative history behind the Immigration and Nationality Act of 1961. Even so, courts have reached converse conclusions. In order to resolve the motion at hand, we will examine the reasoning and rationale of the decisions reflecting both viewpoints.

The starting point for our analysis, of course, is the statute itself and its legislative history. The 1961 amendments to the Immigration and Nationality Act made substantial changes in the procedures pertaining to the admission, exclusion and deportation of aliens. Section 106(a) of the Act, codified at 8 U.S.C. § 1105a(a), established the procedures for judicial review of all final orders of deportation pursuant to administrative proceedings to determine deportability under 8 U.S.C. § 1252(b). Prior to the 1961 amendments, an order for deportation could be challenged in actions for declaratory judgments and habeas corpus relief, as well as actions of declaratory and injunctive relief under the Administrative Procedure Act. *See United States ex rel. Marcello v. District Director, I.N.S.,* 634 F.2d 964, 967 n. 1 (5th Cir.), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981). With these many avenues of relief, aliens under orders of deportation could institute judicial actions to prevent or delay indefinitely their deportation. *Foti v. I.N.S.,* 375 U.S. 217, 225, 84 S.Ct. 306, 311, 11 L.Ed.2d 281 (1963).

In order to streamline the deportation proceedings and reverse the lengthy delays caused by judicial review of deportation orders, Congress enacted section 1105a. *Foti,* 375 U.S. at 224, 84 S.Ct. at 311; *Marcello,* 634 F.2d at 966–67. Congress sought to eliminate the inordinate delays in the judicial review process by (1) vesting exclusive jurisdiction for judicial review

with the courts of appeals, thereby bypassing review by the district courts; and (2) requiring that judicial review be sought within six months of the issuance of the deportation order. *Foti,* 375 U.S. at 224–26, 84 S.Ct. at 311–12; *Marcello,* 634 F.2d at 968. The purpose of these provisions was to "create a single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens...." H.R.Rep. No. 1086, 87th Cong., 1st Sess., *reprinted in* 1961 U.S. Code Cong. & Admin.News 2950, 2966 [hereinafter H.R.Rep. 1086].

However, Congress also enacted section 1105a(a)(9) extending habeas corpus relief to persons in custody under orders of deportation. The legislative history notes that the right to habeas corpus was specifically reserved to an alien in custody. The congressional report also indicates:

> "It excepts habeas corpus from the language which elsewhere declares that the procedure described for judicial review in circuit courts shall be exclusive. The section in no way disturbs the Habeas Corpus Act in respect to the courts which may issue writs of habeas corpus: aliens are not limited to the courts of appeals in seeking habeas corpus."

H.R.Rep. 1086, 1961 U.S.Code Cong. & Admin.News at 2973. At the time the 1961 amendments were enacted, the availability of a writ of habeas corpus was extremely limited. Since 1961, however, the courts have broadened the scope of habeas corpus relief by defining the "in custody" requirement broadly.[4] *Marcello,* 634 F.2d at 967. Under this broader definition of "in custody," any alien whose freedom of movement is limited by an order of deportation may be considered sufficiently restrained to be considered "in custody" for habeas corpus purposes. *Id.*

However, the foregoing legislative history does not expressly define the relationship between the two judicial review provi-

---

4. In 1963, the "in custody" requirement of habeas corpus proceedings was broadly interpreted to include any significant restraint on liberty, including parole. *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963). It also has been interpreted to include a person who is released on his own recognizance pending trial. *Hensley v. Municipal Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973).

sions found in section 1105a(a). This lack of guidance is reflected in the inconsistent decisions handed down by federal courts on this issue. One line of authority is reflected in *Daneshvar v. Chauvin,* 644 F.2d 1248 (8th Cir.1981). In *Daneshvar,* the petitioner overstayed his student visa and was found deportable by an immigration judge. The alien did not depart voluntarily within the time provided and eventually was arrested. He then filed an application for writ of habeas corpus, claiming that his deportation proceedings lacked due process. The district court dismissed some of the claims for lack of jurisdiction, ruling that all claims which challenged the actual deportation order were within the exclusive jurisdiction of the court of appeals under section 1105a(a). *Id.* at 1248–49.

In examining the jurisdiction question on appeal, the Eighth Circuit Court of Appeals first emphasized the purpose of the exclusive jurisdiction provision in section 1105a(a): that is, to streamline the judicial review process by eliminating initial review by the district court. *Id.* at 1250. In comparing the habeas corpus provision with the exclusive jurisdiction provision of section 1105a(a), the court noted that section 1105a(a)(9) was "on its face an exception to the general rule of exclusivity...." However, they refused to read the habeas provision as "creating district-court [sic] jurisdiction, even to review final orders of deportation, when the affected person [was] in custody." *Id.* According to the Eighth Circuit, the whole purpose of the enactment would be crippled if habeas corpus jurisdiction was not limited. Due to the availability of the remedy to all aliens "in custody" and the broad interpretation of the "in custody" requirement under current law, the section would be available to many aliens. *Id.* at 1251 (citing *United States ex rel. Parco v. Morris,* 426 F.Supp. 976, 978 n. 4 (E.D.Pa.1977)). Thus, the general rule of exclusive jurisdiction in the court of appeals would be swallowed by the habeas corpus exception. In order to avoid this result, the court limited habeas corpus jurisdiction under section 1105a(a)(9) to "review of the denial of discretionary relief where deportability itself is not an issue." *Id.* at 1251.

This limited reading of habeas corpus jurisdiction under section 1105a(a)(9) has been followed by several courts. *See, e.g., Matter of Odeh,* 601 F.Supp. 25 (E.D.Ill. 1984); *Bazrafshan v. Pomeroy,* 587 F.Supp. 498 (D.N.J.1984); *Te Kuei Liu v. I.N.S.,* 483 F.Supp. 107 (S.D.Tex.1980); *United States ex rel. Parco v. Morris,* 426 F.Supp. 976 (E.D.Pa.1977).

However, a second interpretation of section 1105a(a) has prevailed in two other circuits. This second view was first enunciated by the Fifth Circuit in *United States ex rel. Marcello v. District Director,* 634 F.2d 964 (5th Cir.), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981) [hereinafter *Marcello* ]. There, the petitioner was the subject of a deportation order. He applied for suspension of deportation, but that request was denied. The petitioner then filed a habeas corpus action in the district court. Before a ruling was made in the action, Marcello was taken into custody by the government. The district court concluded that it had jurisdiction over the matter and vacated the decision denying the suspension. *Id.* at 966.

On appeal, the court of appeals examined section 1105a and its legislative history. They noted Congress' desire to reduce delays in deportation proceedings caused by prolonged judicial review procedures. *Id.* at 967–68. However, the court concluded that in enacting section 1105a, Congress intended to establish two mutually exclusive modes for reviewing deportation orders. One procedure gave exclusive jurisdiction for judicial review to the court of appeals; this avenue was available to persons subject to deportation orders but who were not in custody. The second mode provided for review by habeas corpus when the alien was in custody. *Id.* at 968.

In reaching this conclusion, the court relied on language in the House report which expressly stated that "[t]he writ of habeas corpus [was] specifically reserved to an alien held in custody pursuant to an order of deportation." H.R.Rep. 1086, 1961 U.S. Code Cong. & Admin.News at 2966. In

addition, a letter from then Deputy Attorney General Byron R. White (currently a Justice of the U.S. Supreme Court) was emphasized. This letter set forth the Justice Department's view on the legislation. White's letter seemed to indicate that section 1105a(a) was intended to be the exclusive method of judicial review "for aliens not in custody." *Marcello*, 634 F.2d at 968–69; H.R.Rep. 1086, 1961 U.S.Code Cong. & Admin.News at 2968–69. Based on this legislative history, the Fifth Circuit held that the habeas corpus jurisdiction was *not* limited by the "exclusive jurisdiction" language of section 1105a(a). Therefore, federal district courts had habeas corpus jurisdiction to review decisions by immigration authorities, even those decisions which fall within the definition of "final deportation orders."

After reaching this conclusion, the Fifth Circuit turned to the question of who was entitled to seek habeas corpus relief under section 1105a(a)(9). The court recognized that the broad judicial definition of "in custody" which developed *after* 1961 would include many aliens who were not in actual physical custody. However, the legislative history of the 1961 Act clearly indicated that Congress intended to "severely limit the *availability* of habeas review." *Marcello*, 634 F.2d at 969 (emphasis added). In light of the statute's purpose and history, the court determined that "the mere existence of an outstanding deportation order against an alien [did not place] him in the status of 'held in custody.'" *Id.* at 970. Instead, section 1105a(a)(9) required "actual, physical custody in a place of detention." *Id.* at 969; *Umanzor v. Lambert*, 782 F.2d 1299, 1302 (5th Cir.1986). Such a narrow reading of the "in custody" requirement is consistent with the availability of habeas corpus review at the time the statute was enacted.

The reasoning enunciated in *Marcello* has been accepted by at least one other circuit. *See Williams v. I.N.S.*, 795 F.2d 738 (9th Cir.1986). In addition, dicta in one Tenth Circuit decision seems to reach the same result as *Marcello*. *See Pilapil v. I.N.S.*, 424 F.2d 6, 8 (10th Cir.), *cert. de-*

*nied,* 400 U.S. 908, 91 S.Ct. 152, 27 L.Ed.2d 147 (1970).

After carefully reviewing the *Daneshvar* and *Marcello* decisions, as well as the limited legislative history of section 1105a, we conclude that the Fifth Circuit's reasoning in *Marcello* is more persuasive. The congressional record indicates that the lawmakers intended to reserve the right to habeas corpus relief to individuals "in custody" under deportation orders. There is nothing in the structure of the statute nor the legislative history which reflects an intent to limit the types of claims a detained alien could bring in a habeas action. A letter from Lawrence E. Walsh, then Deputy Attorney General, to the House committee chairman also supports this view. Walsh indicated that section 1105a "would provide a single method of review of deportation orders *for aliens not in custody*. . . . [A]liens in custody would obtain review by habeas corpus proceedings." H.R.Rep. 1086, 1961 U.S.Code Cong. & Admin.News at 2969 (emphasis added). Therefore, the court finds that section 1105a creates two distinct avenues for judicial review of deportation orders, but their availability to a particular petitioner depends on whether he/she is in custody. Because the statute provides two avenues of relief, we find that the habeas corpus jurisdiction established in section 1105a(a)(9) is not restricted by the "exclusive jurisdiction" provision in section 1105a(a). In this case, petitioner is clearly in custody, and thus his exclusive avenue of relief is through habeas corpus review under section 1105a(a)(9). Consequently, we have jurisdiction to hear all of his claims, even those that directly challenge a final deportation order.

The court further finds that this interpretation is consistent with Congress' stated purpose to shorten the judicial review process. Our interpretation of this statute is consistent with this goal for several reasons. First, habeas corpus proceedings generally are expedited at the district court level. Thus, the "additional" step in the review process does not cause substantial delay. In addition, the statute

prevents aliens from seeking repeated review. Absent exceptional circumstances, courts do not have jurisdiction to hear petitions for review *or* for habeas corpus if they raise claims asserted in an earlier petition. 8 U.S.C. § 1105a(c).[5] Finally, a narrow reading of the "in custody" requirement of section 1105a(a)(9) limits the availability of habeas corpus review. Since petitioner is in actual physical custody of the INS, we need not decide the exact scope of the "in custody" requirement here.

 For these reasons, the court finds that our jurisdiction in this matter is not limited by 8 U.S.C. § 1105a(a). As a district court, we can hear all claims of a *detained* individual challenging his deportation as long as he otherwise complies with section 1105a(a). The government does not raise any other jurisdictional defenses. Therefore, the respondent's motion to dismiss the petition for writ of habeas corpus is denied.

At this point, the court does not have adequate records or information with which to rule on the merits of the petitioner's claims. Therefore, the respondent is ordered to file a response and supply administrative records pertaining to petitioner's claims. This response shall be filed no later than twenty (20) days from the date of this order. If petitioner desires to traverse and file his reply, he may do so no later than ten (10) days thereafter.

IT IS THEREFORE ORDERED that petitioner's motion to transfer is denied.

IT IS FURTHER ORDERED that the respondent's motion to dismiss is denied.

IT IS FURTHER ORDERED that a rule to show cause issue returnable within twenty (20) days from the date of the filing of this Order; that the petitioner be granted ten (10) days after receipt by him of a copy of the respondents' answer and return to file a traverse thereto, admitting or denying under oath all factual allegations therein contained; and that the file then be returned to the undersigned judge for such further action as may be appropriate.

---

5. This section provides, in part: "Every petition for review or for habeas corpus shall state whether the validity of the order has been upheld in any prior judicial proceeding.... *No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding,* unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order." 8 U.S.C. § 1105a(c) (emphasis added).