9 F.3d 1557
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Hossein REZAIAN, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-9520.
 United States Court of Appeals, Tenth Circuit.
 Sept. 3, 1993.
 
 Before LOGAN, MOORE and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner Hossein Rezaian appeals a decision of the Board of Immigration Appeals (BIA) affirming a final deportation order and denial of asylum by an immigration judge (IJ). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a). We must affirm if the decision of the BIA is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias Zacarias, 112 S.Ct. 812, 815 (1992); 8 U.S.C. § 1105a(a).
 
 
 3
 Petitioner argues on appeal that he qualified for asylum, and that his due process rights to counsel were violated.
 
 
 4
 Petitioner first came to the United States in 1970 while a member of the Iranian Navy. He studied marine engineering at the University of Utah for two years and continued his education at the Maritime Academy in Maine for an additional two years. He then returned to Iran and remained with the Iranian Navy until his honorable discharge in late 1988. Petitioner returned to the United States on January 19, 1989, as a "visitor for pleasure" with permission to remain for approximately six months. He applied for political asylum on February 2, 1989; the application was denied on January 24, 1990. Deportation proceedings began on April 11, 1990. Upon concluding those proceedings, the IJ denied asylum and withholding of deportation, finding petitioner had failed to establish a reasonable possibility or a clear probability he would be persecuted. 8 U.S.C. § 1101a(42)(A). Petitioner appealed to the BIA, which affirmed. Petitioner then timely appealed to this court.
 
 
 5
 Petitioner's naval career included two incidents which he asserts support his reasonable belief he will be persecuted if he returns to Iran. First, during the Iran-Iraq war of 1986, he was in charge of a large prisoner of war camp in Iran. He maintained contact with Iranian expatriates (from the 1979 revolution) during this period, and alleged his telephone calls were monitored and he became the subject of court-martial proceedings. The second critical incident was the destruction of a civilian Iranian airbus (piloted by petitioner's brother) by the United States Navy in July 1988. Petitioner states that his court-martial proceedings were discontinued during the aftermath of that occurrence. He alleges, however, that his subsequent criticism of Iran Air and the Khomeini regime regarding the airbus tragedy led to resumed court-martial efforts. The record contains conflicting evidence concerning the result of that court-martial, but petitioner testified that the charge was ultimately held in abeyance. He then was permitted to spend two months in Turkey, beginning in September 1988, to assist his deceased brother's wife and children.
 
 
 6
 While in Turkey, petitioner procured a visa to travel to the United States, but inexplicably returned to Iran in November 1988. He asserts his passport was temporarily confiscated upon re-entering Iran and his name was included on a list of individuals who could not leave the country. Nonetheless, he again was allowed to leave Iran for Turkey in January 1989, and continued on to the United States. Petitioner's wife and two children also traveled to Turkey in January 1989, and apparently remained there for about six months.
 
 
 7
 The IJ heard testimony from petitioner and a friend, received documentary evidence, and concluded petitioner had not adequately explained why he returned to Iran in late 1988 if he believed he was at risk. The IJ specifically questioned petitioner's credibility, noting internal inconsistencies in petitioner's testimony, that of his friend, and the exhibits. The IJ then found that petitioner had failed to demonstrate he had a reasonable belief he would be persecuted or that a clear probability of persecution existed. On appeal, the BIA affirmed these findings. The BIA decision detailed contradictory statements petitioner made to the American Consul in Turkey and on his asylum application.
 
 
 8
 We have reviewed the record and agree that the findings of the IJ and BIA are supported by substantial evidence. Petitioner failed to satisfactorily explain why he voluntarily returned to Iran in November 1988. If he truly believed he was under suspicion and on a list of persons not allowed to leave the country, he failed to show why he was permitted (a second time) to leave in January 1989. His purported reasons for seeking a visa from the American Consul in Turkey do not comport with his asylum application or his testimony before the IJ. His representations to the Consul omitted his arrest by Iranian authorities, and indicated he wanted to enter the United States to visit the maritime academy. The information on his Form I-589 regarding his court-martial and alleged incarceration is inconsistent with his testimony before the IJ. Petitioner's verbal and written representations are inconsistent and his actions are not those of one truly in fear of persecution. The record contains a factual basis for discrediting petitioner's assertions of anticipated persecution, and calling into question his credibility as a whole.
 
 
 9
 The second issue is petitioner's allegation, raised here for the first time, that he was denied due process in that he was not permitted to obtain counsel. This court has permitted a petitioner challenging a deportation order to raise constitutional issues for the first time on appeal. Pilapil v. INS, 424 F.2d 6, 9 (10th Cir.), cert. denied, 400 U.S. 908 (1970). Our review in such cases is limited to the administrative record, id. at 8; therefore, petitioner's failure to raise his due process claims before the BIA does not preclude our review.
 
 
 10
 We have held, consistent with 8 C.F.R. § 242.16(a), that due process is satisfied when a petitioner is informed of his right to obtain counsel, and the IJ confirms he understands that right, offers a list of legal aid attorneys, and informs petitioner of his right to appeal. Nazakat v. INS, 981 F.2d 1146, 1148-49 (10th Cir.1992). Petitioner knowingly waived his right to obtain counsel, and acknowledged on the record that his attempts to do so had been unsuccessful. Only following a four-month adjournment, and at the close of the hearing, did he alter his position and request representation. Under these circumstances, petitioner's right to obtain counsel was satisfied and we find no due process violation.
 
 
 11
 AFFIRMED. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrine of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3